**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

|  |  |
|---|---|
| Rami Khaled El Ali, et al.,<br><br>         Plaintiffs,<br><br>v.<br><br>Matthew Whitaker, et al.,<br><br>         Defendants. | Case No. 8:18-cv-02415-PX<br><br>**JOINT STATUS REPORT** |

The Parties respectfully provide this Joint Status Report, as ordered by the Court at the May 22, 2020 virtual hearing. At that hearing, the Court indicated that it may need to better "understand[] how . . . the Watch List Advisory Council [WLAC] works" in order to assess the question of Plaintiffs' standing to sue some of the defendants.[1] Hearing Tr. at 9:6-9. It consequently ordered the parties to meet and confer regarding the parties "respective positions for expedited targeted discovery on standing in advance of merits-based discovery. (Dkt. 66). The parties have now met and conferred with respect to their positions on holding an evidentiary hearing (whether virtually or in person), or targeted jurisdictional discovery. Finding themselves unable to reach agreement, the Parties set forth their respective positions as follows:

Plaintiffs' Position:   Plaintiffs believe an evidentiary hearing would be illuminating for the Court, but given the federal government's propensity to mislead the public and courts about their watchlisting system, a hearing would be most useful if it followed targeted, adversarial discovery. Without this discovery, Defendants may be able to avoid liability for their actions by using national security nondisclosure as both a sword and shield or otherwise misstate how their watchlisting system

---

[1] Defendants do not contest Plaintiffs' standing against many Defendants. "The only Defendants properly before this Court on the claims alleged are TSA, FBI, TSC, NCTC, DHS, CBP, and ICE." Defendants' Reply, Dkt. 53 at 4.

works. This possibility, underscored by the misleading declaration Defendants attach to this filing, is likely what Defendants will use to base their demand to dismiss entities who help lead the watchlisting system and use it to injure Plaintiffs and others.

With regards to their secret watchlist that is disseminated all over the world, Defendants have—unsurprisingly—a track record of obfuscation. In a deposition two years ago, for example, the FBI testified that no private entity has access to watchlist information via the National Criminal Information Center (NCIC). Ex. B – *Elhady* FBI Dep. at 114. This testimony, however, did not sway the Eastern District of Virginia, which ordered more substantial disclosures regarding private dissemination. Those disclosures revealed that more than 1,400 private entities have access to watchlist information.[2]

On March 20, 2018, TSA testified during a deposition that it "does not perform intelligence collection on passengers at the airport." Exhibit C - TSA Dep. at 185. *See also Id.* at 181 ("I wouldn't say there's a name for the different security measures…that may occur after the checkpoint. There's not a name given for that."). Four months later, thanks to the Boston Globe's Spotlight investigative team, the public—and the Eastern District of Virginia—learned about TSA's Quiet Skies[3] program— an alarming, beyond-the-checkpoint intelligence-gathering operation that began on March 13, 2018, just a week before TSA testified deceptively. There, Magistrate Judge Anderson ordered TSA to sit for a subsequent deposition based on his concern that TSA's testimony "really wasn't accurate." Exhibit D - *El Hady* Hearing Transcript at 79-80.

---

[2] Matthew Barakat, *Judge Orders Feds to List Private Groups Receiving Watchlist*, Associated Press, (February 22, 2019) https://apnews.com/be5c1138b2d3483db46cd311026ddb67 ("The government admitted earlier this month in a court filing that private groups like universities and hospitals receive access to the list, after denying in previous court hearings and depositions that they do.")

[3] Camila Domonoske, *TSA's 'Quiet Skies' Program Tracks, Observes Travelers in the Air,* NPR (July 30, 2018) https://www.npr.org/2018/07/30/633980912/tsas-quiet-skies-program-tracks-observes-travelers-in-the-air

And now, Defendants submit a declaration claiming that the WLAC is nothing more than an informal meeting. But that is not how former TSC Director Timothy Groh characterized the WLAC. On March 1, 2018, TSC testified that officials made exceptions to their inclusion standard "[b]ecause we were directed by the Watch Listing Advisory Council in certain instances for certain purposes to apply a different standard." Exhibit E - TSC Dep. at 68. TSC testified that the watchlisting system's "policies and procedures are governed by whatever the current Watch Listing Guidance is, which is promulgated by…the Watch Listing Advisory Council." *Id.* at 15. Indeed, TSC made clear that the WLAC makes decisions "by unanimous consent." *Id.* at 28.

Plaintiffs believe that written discovery to all defendants regarding (1) the WLAC and the Defendants' roles in the WLAC, particularly their role in in creating, approving, and using Watchlist Guidance—the document that governs the entirety of the watchlisting system across all federal agencies and (2) Defendants' access and use of watchlist information and their ability to remove or add individuals to the TSDB. Plaintiffs also believe the following sixour depositions are appropriate:

1. A 30(b)(6) deposition of the WLAC regarding how it operates, what it does, and how agencies participate in managing WLAC affairs.

2. Jason V. Herring, Deputy Director of Operations of the Terrorist Screening Center, who Defendants intend to call at the hearing. Plaintiffs would expect Deputy Director Herring to also testify as a 30(b)(6) witness as to the TSC's role as co-chair of the WLAC and what it knows about how Defendants utilize TSDB information.

3. A 30(b)(6) designee for the FBI, which is a primary leader of the watchlisting system across the federal government, as to what the FBI knows about how other defendants and entities participate in the watchlisting system in addition to what watchlist information the FBI discloses to other Defendants when performing security investigations.for those Defendants.

4. The NCTC, who acts as the other co-chair of the WLAC, as to the WLAC and the NCTC's role of co-chair of the WLAC.

5. The Department of the Treasury, who, through itself or its subagency the Financial Crimes Enforcement Network (FinCEN), use the watchlist to close listees' bank accounts without notice and blocking them from conducting wire. As the Second Amended Complaint details, plaintiffs Albadawi, Siddiqui (and his family), Hachem, and Hijaz have had bank accounts terminated. Second Amended Complaint (Dkt. 44-1) at ¶¶ 881, 1008-09, 1205-06, 1350. Plaintiffs are also aware that FinCEN uses the watchlist to analyze listees' financial records and nominate financial associates of those listees to the watchlist.[4] Plaintiffs need discovery from Treasury to more fully understand how Treasury uses the watchlist and what consequences Treasury imposes as a result of watchlist status.

6. USCIC, who uses the watchlist to deny those on it government benefits and impose consequences, including indefinitely delaying or denying immigration benefits. Plaintiffs are aware that USCIS has an express, yet secret, policy of delaying and denying applications for immigration benefits from those on the Watchlist that is currently the subject of active litigation. *See Wagafe v. U.S. Citizenship & Immigration Servs.*, 17-cv-0009 (W.D. Wash. filed Jan. 23, 2017). This includes a program called the Controlled Application Review and Resolution Program (CARRP), USCIS's policy for "identifying and processing cases with national security (NS) concerns" and applies to "all applications and petitions that convey immigrant or nonimmigrant status."[5] CARRP is designed to "ensure that immigration benefits are not granted to individuals and organizations that pose a threat to national

---

[4] Steve Hudak, *FinCEN Awards Recognize Partnership Between Law Enforcement and Financial Institutions to Fight Financial Crime*, FinCEN Press Release (May 10, 2016), https://www.fincen.gov/news/news-releases/fincen-awards-recognize-partnership-between-law-enforcement-and-financial.

[5] Jonathan R. Scharfen, *Policy for Vetting and Adjudicating Cases with National Security Concerns*, USCIS 1 & n.4 (Apr. 11, 2008), https://www.uscis.gov/sites/default/files/USCIS/About%20Us/Electronic%20Reading%20Room/Policies_and_Manuals/CARRP_Guidance.pdf.

4

security."[6] CARRP creates significant hurdles for watchlistees to obtain immigration benefits that delay those benefits and make them less likely to be granted.[7] As a result, Plaintiffs have suffered delays in immigration benefits. Muminov's mother had her visa revoked. Amended Complaint at ¶¶ 1124-25. Hijaz's citizenship application has been stalled. *Id.* at ¶ 1351. The El Ali family has suffered as a result of Khaled El Ali losing ESTA Travel Authorization and irregularities regarding his visa processing. *Id.* at ¶¶ 291 and 300. Plaintiffs require discovery to understand the connection between the watchlist, CARRP process, and the delay or loss of immigration benefits, as well as USCIS's connections to Plaintiffs' adverse consequences at land and air borders.

Written discovery, limited in scope, would not create an undue burden on Defendants. And allowing six targeted depositions is reasonable given how little the Government makes public about the significant consequences caused by watchlist placement.

Plaintiffs also believe they should be entitled to seek additional depositions or written discovery depending on the information (or lack thereof) that Defendants provide. And Plaintiffs are aware based on other watchlist litigation that Defendants will avoid disclosure of pertinent information by purporting to rely on various security and deliberative privileges, which will inevitably require discovery motions practice.

If the Court is going to have an evidentiary hearing, Plaintiffs should also have the ability to enter into the evidence the results of any discovery as well as the record produced in *Elhady v. Kable*, 16-cv-375 (E.D. Va.), to counter the Government's evidence and provide their own as to why jurisdiction is proper over each of the Defendants.

---

[6] U.S. Citizenship & Immigration Servs., CARRP Officer Training: National Security Handouts 2 (Apr. 2009), https://www.aclusocal.org/sites/default/files/wp-content/uploads/2013/01/Guiance-for-Identifying-NS-Concerns-USCIS-CARRPTraining-Mar.-2009.pdf.
[7] *See* Jerome P. Bjelopera et al*., The Terrorist Screening Database and Preventing Terrorist Travel, Congressional Research Serv.* 4 (Nov. 7, 2016), https://fas.org/sgp/crs/terror/R44678.pdf, at 4 & 9, *CARRP Office Training*, at 2.

5

<u>Defendants' Position</u>:  Defendants recognize the Court's desire to resolve any remaining questions regarding the Plaintiffs' standing to sue certain Defendant agencies as efficiently as possible.  To that end, Defendants respectfully provide the attached supplemental Declaration of Jason V. Herring, Deputy Director for Operations of the Terrorist Screening Center, attached hereto as Defendants' Exhibit 1, which describes in further detail the function and structure of the WLAC and its participant agencies, as well as information regarding "who controls and makes the decisions with regard to the database," Hearing Tr. at 15:1-2, with respect to nominations, government information sharing, quality assurance, and removal.   Defendants provide this declaration to assist the Court in deciding whether Plaintiffs have standing against WLAC participant agencies.

If the Court determines, after reviewing this supplemental declaration, that factual questions with respect to the WLAC still remain, Defendants believe the best course of action would be to allow Deputy Director Herring to testify at a virtual evidentiary hearing on a set of topics to be identified by the Court after the June 18, 2020 merits hearing.  Defendants request that any evidentiary hearing be held no earlier than 30 days after the issuance of an order setting such hearing, to allow Deputy Director Herring sufficient time to prepare while attending to the numerous demanding and time-sensitive responsibilities of his position, and also to account for the impact of the ongoing COVID-19 pandemic on TSC's normal staffing levels and operations.

Defendants object to Plaintiffs' extremely broad request for discovery prior to any evidentiary hearing.  Plaintiffs desire no fewer than six depositions, as well as unidentified and open-ended "additional depositions or written discovery depending on the information (or lack thereof) that Defendants provide." *See supra* at 5.  Plaintiffs' also propose deposition topics that make little sense:  Plaintiffs propose a deposition of FinCEN regarding "its use [of] the watchlist to close listees' bank accounts without notice and blocking them from conducting wire [transfers]," even

though neither FinCEN nor the Treasury Department has such authority, and Defendants informed Plaintiffs of this fact; and they propose a deposition of USCIS that includes a reference to a purported program that does not appear in their Amended Complaint, *see supra* ¶ 6, as well as to the ESTA program, which is run through CBP, not USCIS.  *See* Defs' MTD, ECF No. 49-1, at 23 n.13 (describing ESTA).  This Court should not allow Plaintiffs to obtain such discovery at this juncture where there are significantly more efficient and less burdensome options to answer any remaining questions the Court may have as to standing.

The Court clearly indicated at the May 22, 2020 hearing that it would not "pull all of these agencies through a  . . . merits-based discovery on the surviving claims before understanding how . . . the Watch List Advisory Council works."  Hearing Tr. at 9:6-9.  Plaintiffs' proposal does just that, and would impose a heavy burden on numerous federal agencies that are already operating at limited capacity due to the COVID-19 pandemic.  Particularly where the Court has already indicated it is "leaning strongly" toward eliminating a number of the defendant agencies from this suit, *id.* at 9:5, it should not require those agencies to respond to burdensome jurisdictional discovery where a more efficient course of action is available.  In light of these concerns, if the Court has remaining questions, Defendants request the Court hold an evidentiary hearing as described above.

Defendants' also object to Plaintiffs' inclusion in this filing of numerous false allegations, citations to news articles,[8] and other irrelevant miscellany from prior litigation.  In particular, Defendants object to Plaintiffs' allegations with respect to the NCIC and the TSA's Quiet Skies program; both of these issues are nuanced, complex, and far afield from the standing question.  Defendants respectfully refer this Court to the Government's declarations filed in *Elhady* for a fulsome picture on both issues.  *See Elhady v. Piehota*, No. 1:16-cv-375 (E.D. Va), ECF No. 239-1

---

[8] The court may take judicial notice of the statements in the news articles Plaintiffs cite, but it may not use them for the purpose of determining the truth of those statements.  *See e.g. Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1122-23 (N.D. Cal. 2017).

(public redacted declaration of Hao-y Froemling describing the Quiet Skies program); *id.*, ECF No. 301-4 (declaration of Scott Rago, describing NCIC access to certain private entities for law enforcement purposes, and related protections).

Defendants object, as well, to Plaintiffs' inclusion of various allegations regarding purported Government programs that do not appear in their Complaint. *See supra* at 4-5. *Cf.* CUMIS Ins. Soc., Inc. v. Raines, No. CIV.A. 3:12-6277, 2013 WL 500305, at *2 (S.D.W. Va. Feb. 11, 2013) (holding that the court would "not ascribe to a plaintiff a potential claim for relief which it has not pled," where, "as master of the complaint, '[t]he plaintiff selects the claims that will be alleged.'") (quoting *United States v. Jones,* 125 F.3d 1418, 1428 (11th Cir. 1997)). If Plaintiffs wish to amend their Complaint they may seek leave to do so, but they should not use this filing to add yet another aspect to a lawsuit already bursting at the seams. Furthermore, Defendants object to Plaintiffs' request to enter unlimited evidence at an evidentiary hearing, if one is held, of "the results of any discovery as well as the record produced in *Elhady v. Kable*, 16-cv-375 (E.D. Va.)," which was decided on summary judgement and includes reams of documents and other information irrelevant to the question of Plaintiffs' standing against individual WLAC participant agencies. Instead, as described above, Defendants request that the Court strictly limit the introduction of any such evidence to only information relevant to specific hearing topics to be identified by the Court.

Finally, at the May 22, 2020 hearing, the Court requested that Defendants inform the Court beforehand with respect to how counsel intend to split the argument between them. To that end, Defendants' counsel respectfully informs the Court that Antonia Konkoly will be handling the jurisdictional questions related to the application of 49 U.S.C. § 46110 as well as the Plaintiffs' standing, the APA claim, the Fourth Amendment claims, and the Fifth Amendment Self-Incrimination claim. Christopher Healy will address the Procedural and Substantive Due Process claims, as well as the Equal Protection, First Amendment, RFRA, and Non-Delegation claims.

Although this split does not align precisely with the order of arguments in the briefing, counsel determined such a division would best equalize the significant amount of preparation necessary between the two of them. Defendants hope that this information will assist the Court in efficiently planning the June 18, 2020 hearing.

Dated: June 11, 2020

Respectfully Submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

ROBERT K. HUR
United States Attorney

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

_____/s/_____
Antonia Konkoly
Christopher R. Healy
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW, Room 11110
Washington, DC 20005
(202) 514-2395 (direct)
(202) 616-8470 (fax)
antonia.konkoly@usdoj.gov
christopher.healy@usdoj.gov

*Counsel for the Official Capacity Defendants*

CAIR LEGAL DEFENSE FUND

BY:   */s/ Lena F. Masri*
LENA F. MASRI (20251)
GADEIR I. ABBAS (20257)*
JUSTIN SADOWSKY (20128)
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 488-8787

*Attorneys for Plaintiffs*

\*Mr. Abbas is licensed in VA, not in D.C. Practice limited to federal matters.