IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MUTASEM JARDANEH, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 8:18-cv-02415-PX |
| ) | |
| WILLIAM P. BARR, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' MOTION TO COMPEL**

    **P**laintiffs, individuals on the Government's Terrorism Security Database, known as the TSDB or the Terrorist Watchlist, in this case struggle through an unending set of life-defining adverse consequences. Children are separated from their parents, and innocent people—U.S. citizens who have never been charged, arrested, or convicted of violent crimes—are denied the ability to attend weddings and funerals and otherwise access modern transportation. Each Plaintiff has been branded as a "known or suspected terrorist," then had that label disseminated throughout local, state, federal and foreign governments. After misleading the public and courts for years, the Government was even recently forced to admit it makes watchlist information to hundreds of private entities. It is a cavalier dissemination—the full extent still unknown—done without thought or reason.

    This Court denied the Government's Motion to dismiss in this case and it now proceeds to discovery. But, based on the Government's suggestions that limited discovery would be sufficient and appropriate, Plaintiffs have been limited to 4 Defendant-wide interrogatories and requests for production and 20 Defendant-specific interrogatories and

requests for production for the WLAC defendants; as far as the Merits defendants, Plaintiffs are allotted 15 plaintiff interrogatories, 10 Defendant-wide interrogatories, 20 Defendant-specific interrogatories, 25 queries of the TSDB database at issue, and then 4 Plaintiff-based requests for production, 15 Defendant-wide requests for production, and 11 Defendant-specific requests.

The result has required Plaintiffs to seek in its first round of requests basic information about Plaintiffs, about watchlist usage and sharing, and about the WLAC. Yet the Government has responded with limited to no information. It refuses to do any search of Plaintiff-specific information or provide any privilege log. It refuses the same for WLAC information. It refuses to disclose information related to the private and foreign entities who have TSDB access. And it has withheld entire swarths of information based on the law enforcement privilege that go to the heart of this case, without basis or sufficient explanation.

## BACKGROUND

Plaintiffs filed their initial requests immediately upon entry of the Rule 16(b) Scheduling Order in this case. Because the watchlist is secret, Plaintiffs need discovery simply to know what additional discovery they need, and so propounded a small first set of discovery focused on initial information regarding Plaintiffs, watchlist use, dissemination, and the WLAC.

Plaintiffs' sole Merits-Defendant-wide request propounded in this first round was for all "Documents of any kind that regard Plaintiffs in any way." Ex. A at 3. This was a request for the basic files that the Government has on Plaintiffs related to the Terrorism Screening Database. But, with a few minor exceptions, the Government declined to even search for responsive documents. Instead, citing burden objections, the "law enforcement and

investigatory files privilege." and the *possible* application of the state secrets privilege, the Government argued that even confirming the existence or nonexistence of documents was privileged. Similarly, the Government declined to provide a privilege log.

As for dissemination, Plaintiffs requested the Government (by way of interrogatory) to list "every entity of any kind that has ever had access to TSDB information in any way." Interrogatory #2, Exhibit B at 22. The Government has provided a list of domestic public entities with access to TSDB information (which may or may not complete and has a few stray private entities listed, such as the private Wayland Baptist University Police Department), and has listed a few foreign entities. Ex. C. The Government (citing the law enforcement and the not-invoked-state secrets privileges) have not, however, generally provided a list of private entities with access, nor has it provided a full list of foreign entities.

Plaintiffs also sought by way of document request all WLAC-related documents from the WLAC Defendants. Specifically, Plaintiffs sought:

> All documents of any kind—including but not limited to minutes, correspondences, rules, agreements, policies, procedures, memoranda, internal and external reports, internal and external communications—that regard the Watchlisting Advisory Council in any way. A comprehensive response to this request must include documents related to WLAC formation, governance, WLAC's statements (or summaries) of conclusion as well as communications to and from the National Security Council and the WLAC co-chairs.

WLAC Doc. Request #1, Ex. D at 3. Like with Plaintiff-related information, and this time without exception, the Government refused to perform a search, provide documents, or provide a privilege log. *Id.* at 6. This time, the Government relied on the deliberative process privilege. *Id.* at 4.

The parties met and conferred but were unable to resolve their differences. Plaintiffs thus file this motion to compel.

## ARGUMENT

**I.  The Government's Failure to Provide a Privilege Log Is Improper**

"When a party refuses to produce documents during discovery on the basis that they are privileged or protected, it has a duty to particularize that claim." *Equal Rights Center v. Lion Gables Residential Trust*, 07-cv-2358, 2010 WL 2483613, at *6 (D. Md. June 15, 2010) (cleaned up) (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 254 n.2 (D.Md.2008)). In order to fulfill that duty, the Government must provide a privilege log. *Gross v. Morgan State University*, 17-cv-448, 2018 WL 9880053, at *7 (D. Md. Feb. 9, 2018). "A party simply cannot claim privilege and refuse to provide a privilege log; indeed, some courts have found that doing so results in waiver of the privilege." *Id.* (quoting *Hake v. Carroll Cty.,* 13-cv-1312, 2014 WL 3974173, at *9 (D. Md. Aug. 14, 2014)). And in providing a privilege log, the Government must do "more than briefly identify and describe each document and identify the basis for the refusal to produce it," does not satisfy this requirement." *Equal Rights Center*, 2010 WL 2483613, at *6 (quoting *Victor Stanley*, 250 F.R.D. at 254 n.2). Instead, the privilege log must be sufficient to particularize both the documents the Plaintiffs seek that are being withheld, as well as allow the Court to fairly adjudicate the claim of privilege. *Id.*

For both Plaintiff documents and WLAC documents, the Government has not provided a privilege log. As for Plaintiff documents, "[s]uch information cannot be disclosed even on a privilege log, as providing a log would itself confirm the existence or nonexistence of such information, thereby disclosing the underlying privileged fact(s)." Merits RFP Response (Ex. A) at 6; *see also id.* at 7, 8, 9, 11, 14, 15, 18. For WLAC documents, "[t]he amount of time required to process, review, and produce a privilege log for these materials would be highly burdensome and not proportional to the needs of this case." Ex. D at 15.

The Government's refusal to provide a privilege log is in error. Absent providing the log, there is no way for either the Court or Plaintiffs' to make any determination whether the withholding is consistent with the law enforcement privilege, whether the privilege has been waived, or whether the privilege has been overcome.

The only reason the Government has provided for refusing to provide a privilege log is its position that even a privilege log would identify which Plaintiffs are on the Terrorism Screening Database. Even if this were grounds for refusing to provide a privilege log, any such issue can be cured. In a different case involving the very same Plaintiffs' counsel, the Government disclosed watchlist status to Plaintiffs' counsel under an Attorneys' Eyes Only protective order. *See Fikre v. FBI*, 13-cv-899, Dkts. 131, 138, 139 (Exs. E-G) (D. Or.). The only difference between that case and this one was that there, disclosure was advantageous to the Government, while here, disclosure would be disadvantageous. *Id.*, Dkt. 138 at 2. But privileges cannot be used as both a sword and a shield. *Burlington Industries v. Exxon Corp.*, 65 F.R.D. 26, 46 (D. Md. 1974).

II.  **The Law Enforcement and State Secrets Privileges should not allow Government to avoid disclosure**

"[T]he law enforcement privilege protects "information that would endanger witnesses and law enforcement personnel or the privacy of individuals involved in an investigation and information that would otherwise interfere with an investigation." *United States v. Marsh*, 193 F. Supp. 3d 585, 597 (E.D. Va. 2016) (cleaned up) (quoting *In re The City of New York*, 607 F.3d 923, 944 (2d Cir. 2010)). "Courts agree that the party asserting the law enforcement privilege bears the burden of showing that the privilege applies." *Id.*

"The law enforcement privilege is qualified." *Hugler v. Bat Masonry Co.*, 15-cv-28, 2017 WL 1207847 (W.D. Va. Mar. 31, 2017). The court must balance "[t]he public interest in

nondisclosure ... against the need of a particular litigant for access to the privileged information." *Id*. (quoting *In re City of New York*, 607 F.3d at 944).

Once the Government has shown the privilege exists, the burden shifts to the Plaintiffs to show that the privilege is overcome. A party seeking disclosure under the privilege should show "(1) that its suit is non-frivolous and brought in good faith, (2) that the information sought is not available through other discovery or from other sources, and (3) a compelling need for the information." *Id*. (citing *In re The City of New York*, 607 F.3d at 945). Specific factors that the Court must consider favoring disclosure include the relevance and importance of the documents to the plaintiff's case, the strength of plaintiff's case, and the importance of the issues involved to the public interest. *See generally King v. Conde,* 121 F.R.D. 180, 194-96 (E.D.N.Y. 1988) (Weinstein, J.); *see also Martin v. Conner,* 287 F.R.D. 348, 351 (D. Md. 2012) (noting *King* as a "leading" case). In contrast, specific factors disfavoring disclosure include the treat to law enforcement officers' safety and privacy, the weakening of law enforcement programs, the chilling of candor during internal investigation, and any relevant privacy laws. *Id.* at 191-94; *Martin*, 287 F.R.D. at 351.

The State Secrets privilege has three prerequisites before it can be invoked. First, it must be asserted by the United States government; it "can neither be claimed nor waived by a private party." *U.S. v. Reynolds*, 345 U.S. 1, 7 (1952) (footnotes omitted). Second, "[t]here must be a formal claim of privilege, lodged by the head of the department which has control over the matter." *Id.* at 7–8 Third, the department head's formal claim of the state secrets privilege may be made only "after actual personal consideration by that officer." *Id.* at 8; *see generally Abilt v. CIA*, 848 F.3d 305, 311 (4th Cir. 2017).

Once invoked, Courts are not to defer blindly to the Government's assertion. Instead, courts "take very seriously our obligation to review the government's claims with a very careful, indeed a skeptical, eye, and not to accept at face value the government's claim or justification of privilege." *Abilt*, 848 F.3d at 312 (cleaned up) (quoting *Al–Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1203 (9th Cir. 2007)). The burden of showing the state secrets privilege applies is on the Government. *Id.*

In this case, the Government claims that it objects or otherwise is not responding because of the "potential" application of the state secrets privilege. The "potential" application of the state secrets privilege is not grounds for failure to produce, and the Government has not yet invoked the State Secrets Privilege. If and when it does, Plaintiffs will review the invocation and respond accordingly.

A.   The Court should compel disclosure of Plaintiffs' information

The first category of documents the Government will, with only minor exceptions, not even look for, much less produce, is information about the Plaintiffs. Plaintiffs' Document Request #1 to the Merits Defendant was: "All Documents of any kind that regard Plaintiffs in any way." Ex. A at 3.

The Government objects because it is overly broad. *Id.* at 3. But how much information does the Merits Defendants have on these individuals? It should be a simple request to ask for the files being kept on these Plaintiffs. And some of the Governments other, more serious objections further show the Government is quite capable of searching for and producing these records were it so inclined.

Relatedly, the Government objects because the request was efficient and to the point. *Id.* at 3-4. The Government complains the Order "allowed Plaintiffs to submit up to four

separate Requests" regarding Plaintiff information, so it cannot possibly be that Plaintiffs are allowed the entire file the Government has on them. Instead, the Government suggests, Plaintiffs must somehow break down the request by seeking only a quarter of the file of a time. But no discovery rule or principle stands for such a proposition that Plaintiffs are aware of, and the Government does not cite any.

Likewise preliminary and without support, the Government objects because Plaintiffs could discern the Government's file from other sources. *Id.* at 4. But this is both untrue (and if it were, would completely defeat the Government's claim of privilege discussed below in more depth), and not grounds for refusing to produce in any event.

Which takes us to the heart of the Government's refusal to produce (with a few small exceptions). The Government claims producing any documents, or even a privilege log, is privileged. *Id.* at 4-5. According to the Government, even confirming that they are withholding information would let Plaintiffs know that they are on the federal terrorism watchlist, which is supposedly privileged. *Id.*

Yet we already know that at least some of the information being withheld is shared broadly with federal, state, foreign, and even private entities. *See* § II, below. To the extent this information is privileged in the first place, that privilege is waived. *United States v. Bolander*, 722 F.3d 199, 222 (4th Cir.2013) ("[T]he holder of [a privilege] may waive the privilege either expressly or impliedly by a voluntary disclosure to a third party.... The burden rests on the person invoking the privilege to demonstrate its applicability, including the absence of any waiver of it.")

Likewise, we also know that the Government is perfectly happy to share this information in litigation when it helps their case under an Attorneys-Eyes-Only protective

order. That is what the Government did in *Fikre v. FBI* when Fikre's current watchlist status advanced a motion to dismiss. *See Fikre*, D. Or. 13-cv-899, Dkts. 131, 138, 139 (Exs. E_G). It is impermissible to use privilege as a sword and a shield. *Burlington Industries*, 65 F.R.D. at 46.

Even if the privilege is otherwise validly invoked here, Plaintiffs' need overcomes it upon a balancing of the equities. The information the Government holds and transmits about Plaintiffs is important to this case in several respects. First, the information provided sheds important light on what derogatory information is sufficient to place one on the watch list, and how the Government interprets its own vague standard for watchlist placement. *See Elhady v. Kable*, 391 F. Supp. 3d 562, 581 (E.D. Va. 2019) ("inclusion standard makes it easy to imagine completely innocent conduct serving as the starting point for a string of subjective, speculative inferences that result in a person's inclusion") (cleaned up). It similarly will be important to show Plaintiffs' claims that watchlist information is not rigorously reviewed. *See* Complaint (Dkt. 48) at 135 (99% acceptance rate for nominations); *see also Elhady v. Kable*, 20-1119, Brief of Appellees (Dkt. 56) (Ex. H) at 18-22 (TSC employees review inclusion requests for, at most, 10 minutes per request). Second, Plaintiffs' watchlist information will be relevant to as applied challenges to watchlist placement. *Kashem v. Barr*, 941 F.3d 358, 374 (9th Cir. 2019). And third, the information will be relevant in connecting the dots between watchlist placement and the myriad effects watchlist placement has had on Plaintiffs. *See Elhady*, 391 F. Supp. 3d at 577-580.

In contrast, the Government's value in keeping Plaintiffs' information secret is minimal. Plaintiffs already know they are on the watchlist because watchlist experience is so unique that no other explanation for what has happened would suffice. At most, all Plaintiffs

do not know is when exactly they were placed on the watchlist and if and when they were taken off the watchlist, as well as the annotations and supposed derogatory information held by the Government.

Nor is there any chilling of candor or privacy interests. And since watchlist status is not evidence of any active investigation, there is no investigation that would be curtailed by providing the information requested. And what derogatory information might exist within Plaintiffs' files will likely show the information is of low quality, insufficient to show any potential criminal conduct, and is often actually conduct protected under the First Amendment, such as engaging in prayer or studying foreign languages.

Finally, despite the Government's claims to the contrary, the information provided is not rigorous. Rather, as noted above, the information learned through *Elhady* litigation is that watchlist decisions are made based on fleeting reviews lasting mere minutes at most. If the information were actually important to any criminal or national security investigation, that information would be reviewed with far more rigor than the Government currently uses.

As a result, the positive *King* factors—the relevance and importance of the documents to the plaintiff's case, the strength of plaintiff's case, and the importance of the issues involved to the public interest—all support disclosure. Plaintiffs' case is strong (as seen by the District Court's decision in *Elhady*), and the information the Government keeps on Plaintiffs goes directly both to how Plaintiffs' constitutional rights are interfered with as well as with the adequacy of the process provided both facially and as applied. The constitutional importance of the Government's secret watchlist is profound. And the negative *King* factors are all inapplicable (law enforcement officers' safety and privacy the chilling of candor during internal investigation, and any relevant privacy laws), except for the weaking of law

enforcement programs, which, for the reasons explained above, does not justify nondisclosure.

At minimum, the Court should order the information provided be produced via a Protective Order or an Attorneys' Eyes Only protective order. *See King,* 121 F.R.D. at 194 ("burden will remain on the police to show why such materials should be reviewed in camera and why disclosure should be denied, especially in the context of an appropriate protective order"); *MacNamara v. City of New York*, 249 F.R.D. 70, 96 (S.D.N.Y. 2008); *Mohamed v. Holder*, 11-cv-50, 2014 WL 11516538, at *1 (E.D. Va. Oct. 30, 2014); Martin, 287 F.R.D. at 349 (Attorneys Eyes Only protective order).[1] To the extent necessary, Plaintiffs request the Court review the material in camera.

### B. The Court should compel the disclosure of private entities who have watchlist access

Plaintiffs requested the Government provide a list of all entities who have had watchlist access:

> Interrogatory #2: Identify every entity of any kind that has ever had access to TSDB information in any way, including but not limited to NCIC-based access, access via a government-issued Original Record Identifier, or access to TSDB information via a Merits Defendant screening a list of private employees against TSDB information.

Exhibit B at 22.

The Government has disclosed a list of state and local entities that have watchlist information, but except for a few stray entities (which may have been unintentionally disclosed), has refused to provide the same for private entities. According to the Government,

---

[1] Of course, the Court should only require a protective order to the extent the information would otherwise not be disclosable at all. *See Lismont v. Alexander Binzel Corp.*, 47 F. Supp. 3d 443, 456 (E.D. Va. 2014) (noting this rule in general and in particular as it relates to Attorneys Eyes Only protective orders).

"[d]isclosure of this detailed information, beyond what is set forth below, could serve as a roadmap for someone seeking to access NCIC for an improper purpose—by, for example, using the list of private ORIs to target personnel with harassing inquiries or phishing attempts for unauthorized access to NCIC information, or recruitment to misuse that access." *Id.* at 29.

The private dissemination of watchlist information causes the stigma-related harm that is part of the stigma.  *See* Dkt. 73 (Opinion) at 33. Meanwhile, private entities are broadly more likely to cause stigma-related harm, as they are not bound by either the Constitution or public duties.

The Government's claim that disclosing private entities' access should be denied because that access is more subject to abuse is the garden variety definition of chutzpah. *See, e.g., Harbor Ins. Co. v. Schnabel Found.*, 946 F.2d 930, 937 n. 5 (D.C.Cir.1991) ("chutzpah is a young man, convicted of murdering his parents, who argues for mercy on the ground that he is an orphan"). The Government simultaneously argues that the watchlist is safe because the security measures put in place protecting access are thorough, and yet it cannot even disclose which private entities have the watchlist for fear it will all become public information.

In any event, according to the Government's own representations, the private entities are merely those that fulfill public duties similar to the public ones anyway. Ex. B at 33-36. If this is true, then it should be pretty straightforward for anyone supposedly trying to do an end-around the terrorist watchlist screening process to figure out what specific organization may or may not have watchlist information anyway. The only terrorists that could possibly be thwarted are those who were both tremendously lazy, and those terrorists would not be trying to do endaround access of the TSDB anyway. Only if the Government's representations are

not true—i.e, if private access is not controlled or limited and the risk of abuse is high—would the Government's supposed need for nondisclosure be rational. Yet, neither public embarrassment nor possible legal liability are legitimate grounds for avoiding the disclosure of information under the law enforcement privilege.

There is, of course, one group of people the Government does have a real interest in avoiding "harassment" (as they call it) regarding the private entities' watchlist access. Should Plaintiffs' counsel discover this information, they may be able to (ethically and cooperatively, or potentially by subpoena, not by any harassment) obtain additional information about how watchlist information is obtained and used from those entities themselves. But the Government's interest in providing information detrimental to their case is not a *King* factor. 121 F.R.D. 191-94. Instead, the possibility of such disclosure favors overcoming the privilege. *Id.* at 196.

Plaintiffs have met their burden under *King*. *Id.* at 191-96. The need for this information is compelling. As the Government is keeping it secret, it cannot be found elsewhere. Its relevance to the Plaintiffs' stigma-plus claim is obvious, as it goes to the heart of how stigmatizing watchlist placement is. And Plaintiffs' case is strong (as seen by the Eastern District of Virginia's decision in *Elhady*), and one important to the public.

Meanwhile the *King* factors disfavoring disclosure are not applicable here. Given the disclosure of actual public state and federal entities, there is no additional threat to any law enforcement officers' safety and privacy, even if the private recipients are deemed law enforcement officers. As explained above, the Government's claim regarding the weakening of law enforcement programs is tepid and would apply equally to state and municipal

agencies, which have been disclosed. And there is no possibility of the chilling of candor during internal investigation or application of any relevant privacy laws from disclosure.

The Court should require the disclosure of private recipients of the watchlist. At minimum, the Court should require the disclosure be provided to Plaintiffs' counsel under seal with the caveat that Plaintiffs are permitted to contact or subpoena those entities regarding their watchlist access. To the extent necessary, Plaintiffs request the Court review the material in camera.

### C. The Court should compel the disclosure of foreign entities who have watchlist access

As noted above, Interrogatory #2 also sought disclosure of private entities who have watchlist access. The Government refuses to provide this information anyway, except for a few entities, such as Turkey, that are already public. According to the Government, disclosure of intelligence-sharing with foreign governments—namely, the identification of the countries with which the United States has information-sharing arrangements, pursuant to which TSC provides the applicable countries with access to TSDB information," "cannot be provided because it is potentially subject to the state secrets privilege, may be classified, and/or also constitutes SSI and law-enforcement sensitive information."

That something "may" be classified is not grounds for nondisclosure; it either "is" classified or it is not. Likewise, the state secrets privilege has not yet been invoked. And Plaintiffs' counsel has been provided SSI access. So the only relevant ground for non-disclosure is the law enforcement privilege.

According to the Government, "Disclosure of information on this subject, beyond what is set forth below, could reasonably be expected to cause harm to the national security by having a chilling effect on foreign government cooperation and assistance, jeopardize

collaborative efforts with foreign governments, and lead to gaps in vital intelligence." Ex. B at 27.

But "beyond what is set forth below" gives away the game. Some of these foreign entity partnerships—Albania, Bulgaria, Georgia, Hungary, and Slovenia," are already disclosed. Others, like India, have publicly shared this information with the world. *See India, US Join Hands to Fight Terrorism*, India Today, June 2, 2016 (Ex. I).[2] That the Government shares watchlist information with foreign entities is neither revelationary or any real big secret. Nor is there any evidence it has harmed the relationship with Albania, Bulgaria, Georgia, Hungrary, Slovenia, or India in any way. So what appears to be the case is that the Government does not want the public *embarrassment* and potential legal liability of admitting that it shares these sensitive information with countries that have terrible human rights records such as war-on-terror allies Saudi Arabia, the Philippines, Qatar, UAE and Kuwait, the latter three which have detained American watchlist plaintiffs and the latter two of which have tortured them.[3]

Again, the *King* factors favor disclosure apply strongly. Alongside the reasons supporting disclosure of private dissemination above (including the stigmatic effect of disclosure), the risks of harm to Plaintiffs of travelling to a country that has been told Plaintiffs are terrorists are obvious, causing them travel-related injury as well.[4] And the *King* factors not

---

[2] Also available at https://www.indiatoday.in/india/story/india-us-terrorism-exchange-of-terrorist-screening-information-arrangement-12023-2016-06-02.
[3] *See. e.g.*, *Fikre v. Fed. Bureau of Investigation*, 904 F.3d 1033, 1035 (9th Cir. 2018) (watchlist plaintiff tortured by UAE for 106 days); *Mohamed v. Holder*, 995 F. Supp. 2d 520, 522 (E.D. Va. 2014) (watchlist plaintiff tortured in Kuwait); *Long v. Barr*, 451 F. Supp. 3d 507, 519 (E.D. Va. 2020) (watchlist plaintiff detained by Qatar).
[4] To be sure, Plaintiffs counsel has no plans to contact or subpoena foreign governments regarding their use of watchlist information at this time.

favoring disclosure are all inapplicable or weak. There is again no additional threat to any law enforcement officers' safety and privacy, no possibility of chilling of candor of internal investigations, and no privacy laws at stakes. And the Government's assertion of a threat to their intelligence sharing operations ring hollow.

At minimum, the Court should order the information provided be produced via an Attorneys' Eyes Only protective order. To the extent necessary, Plaintiffs request the Court review the material in camera.

## II. The Court Should Order Defendants to Search for Responsive WLAC Information

"To fall within the deliberative process privilege, materials must bear on the formulation or exercise of agency policy-oriented *judgment*." *Ethyl Corp v. U.S. E.P.A.*, 25 F.3d 1241, 1248 (4th Cir. 1994) (emphasis in original and citation omitted). To qualify for withholding under the deliberative process privilege, a document must be both "predecisional" and "deliberative." *Petroleum Info. Corp. v. Department of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). A document is "deliberative" if it "reflects the give-and-take of the consultative process by revealing the manner in which the agency evaluates possible alternative policies or outcomes." *Id.* (internal quotation marks omitted). Deliberative material reveals "the manner in which the agency evaluates possible alternative policies or outcomes." *City of Virginia Beach*, 995 F.2d at 1253; *see also Solers, Inc. v. Internal Revenue Serv.*, 827 F.3d 323, 329 (4th Cir. 2016).

Information that (1) "does not contain subjective, personal thoughts on a subject, so public knowledge of the documents will not subject the writer either to ridicule or criticism," (2) "discuss the wisdom or merits of a particular agency policy," or (3) "recommend new agency policy, raising the possibility that their disclosure would mislead the public," the privilege does not apply. *NAACP v. Bureau of Census*, 401 F. Supp. 3d 608, 612 (D. Md. 2019) (quoting

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 869 (D.C. Cir. 1980)). The privilege does not apply to documents that "simply explain and apply established policy." *Id.*

Like other assertions of privilege, the Government must provide a privilege log when it withholds documents or information under the deliberative process privilege. *S.C. Coastal Conservation League v. Ross*, 431 F. Supp. 3d 719, 725 (D.S.C. 2020) (collecting cases from the Fourth Circuit). The privilege log is necessary, among other reasons, for the Court to determine whether the privilege is properly invoked. *Id.*

> Plaintiffs sought in its first request from WLAC:
>
> All documents of any kind—including but not limited to minutes, correspondences, rules, agreements, policies, procedures, memoranda, internal and external reports, internal and external communications—that regard the Watchlisting Advisory Council in any way. A comprehensive response to this request must include documents related to WLAC formation, governance, WLAC's statements (or summaries) of conclusion as well as communications to and from the National Security Council and the WLAC co-chairs.[5]

WLAC Interrogatory #1, Ex. D at 3.

Plaintiffs concede that some of this information may very well be protected by the deliberative process or other privileges. But some of the information sought, on its face, does not. Documents related to WLAC formation and governance likely does not fall within the privilege. Statements and summaries of conclusion likewise do not to the extent they "simply explain and apply established policy." *NAACP*, 401 F. Supp. 3d at 612. And while some communications to and from the WLAC co-chairs (in their official capacity as WLAC co-chairs) may be privileged, not all communications are going to fall under the privilege.

---

[5] The breadth of the request was made necessary because the Government demanded Plaintiffs issue only a small number of requests.

For much the reasons explained in Section I, above, the Government's failure to perform a search, provide a privilege log, and disclose nonprivileged information violates the Rules of Civil Procedure. The Court should order the Government to comply.

## CONCLUSION

The Court should grant Plaintiffs' Motion to compel. The Court should order the Merits Defendants to perform a full search for responsive documents and provide responsive documents and a privilege log to Plaintiffs' Merits Document Request #1. The Court should also order the Merits Defendants to perform a complete response to Plaintiffs' Merits Interrogatory #2, including all private and foreign entities. Finally, the Court should order the WLAC Defendants to perform a full search for responsive documents to Plaintiffs' WLAC Document Request #1, and provide responsive non-privileged documents, with any claim of privilege limited by the actual, narrow contours of the deliberative process privilege, as well as a privilege log.

Dated: March 19, 2020

Respectfully Submitted,

BY: /s/ Lena F. Masri
Lena F. Masri (20251)
Gadeir I. Abbas (20257) *
Justin Sadowsky (20128)
CAIR LEGAL DEFENSE FUND
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 488-8787

*Mr. Abbas is licensed in VA, not in D.C. Practice limited to federal matters.*

Attorneys for Plaintiffs