IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MUTASEM JARDANEH, *et al.*, | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | )    Case No. 8:18-cv-02415-PX <br> ) |
| WILLIAM P. BARR, *et al.*, | ) <br> ) |
| Defendants. | ) <br> ) <br> ) |

**PLAINTIFFS' MOTION TO COMPEL**

Plaintiffs move this Court to compel Defendants to produce blank forms, unredacted, that regard the Government's dangerous, unconstitutional Terrorism Screening Database (known as the TSDB or the Terrorist Watchlist). These empty, fillable forms contain no information specific to any human being and indicate only the kinds of information that Defendants collect at various stages of the watchlisting process. Plaintiffs seek these blank forms from Defendants to aid Plaintiffs in proving, among other things, the facts that gave raise to their Equal Protection Claim.  The TSDB, in its current form, appears to be almost exclusively a collection of Muslim names with no ties to terrorism at all. Yet most terrorist attacks in this country (and in particular, most terrorist attacks committed by US citizens) are not Muslim. Indeed, the largest threat of domestic terrorists come from white nationalists. And yet even long-suspected white nationalist terrorists like Christopher Hasson were not placed on the TSDB.

Among other ways Plaintiffs seek to prove this fundamental violation of Equal Protection is by querying the TSDB to prove how disproportionately Muslim the list is. But

1

to query the database appropriately, Plaintiffs need to know what categories of information the database contains and what information Defendants systematically collect. And, asserting mostly the law enforcement privilege, the FBI refused to provide most of these categories of information. Because the assertion of the Law Enforcement privilege should yield to the importance of the information sought and the flimsiness of the need for any secrecy over blank forms, the Court should compel the FBI to respond fully to Plaintiffs' discovery request.

## OVERVIEW

As explained in Plaintiffs Complaint, Plaintiffs allege that the TSDB violates the Equal Protection Clause, noting that "similarly situated white or Christian individuals do not receive the same treatment as their Muslim counterparts." CF No. 48 ¶ 198. See also *id*. ¶ 201. This allegation was part of the basis for the Court's opinion advancing Plaintiffs' Equal Protection Claim to discovery. ("[T]hough they facially satisfy the same known associate watchlist criteria, close families and friends of convicted white-nationalist domestic terrorists are not routinely added to the federal terrorist watchlist, while distant families and friends of innocent Muslims often discover that their mere association with other watchlisted individuals has caused them to be labeled potential terrorists."); *El Ali v. Barr*, 473 F. Supp. 3d 479, 517 (D. Md. 2020). And in order to establish more information about the disparate treatment Defendants inflict on Muslims, the Court permitted Plaintiffs 25 "discrete, specific numerical information contained within the Terrorism Screening Database (TSDB)." Dkt. 104 at 6.

But to query numerical information contained within a database, one needs to know the categories of information a database contains. So, in its initial discovery requests, Plaintiffs requested that the FBI produce the forms used for entering information into the database:

2

> Document Request No. 1: All standard forms, whether electronic or hard copy, that relate to any watchlisting system process, including nominating, placing, or removing individuals from the TSDB, the No Fly List, the Selectee List, and any other TSDB-related list.

FBI RFP #1 (see FBI RFP Response at 3) (Exhibit A). The FBI objected in part, claiming (among other things), privilege:

> Finally, as discussed further below, the FBI further objects to Plaintiffs' Request because it seeks information that is privileged and/or subject to other appropriate bases for withholding. In particular, the FBI further objects to this Request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.

FBI RFP Response (Ex. A) at 4 (January 29, 2021).

When the FBI actually produced responsive documents on March 8, it provided some categories of information covered in the TSDB, along with dropdown-menu information showing potential entry choices. Exhibit B (responsive documents); *see also* Exhibit C (Letter); Exhibit D (production log); Exhibit E (deletion codes). So we know that the database covers Name, Citizenship, Date of Birth, Physical Characteristics (mainly skin tone, with options including albino, black, dark brown, ruddy, olive, and sallow), as well as "US Persons" (potential responses: yes, no, imposter), and "Cautions" (though what that means or what types of entries exist for that remain unprovided). But it withheld at least 8 categories of information. Although counsel avers that none of the withheld categories is specifically the religion of TSDB listees, Plaintiffs have no other knowledge of what categories of information the FBI is withholding.

3

The primary grounds for failing to provide this information was the law enforcement privilege. *See* Exhibits B and E. But some information has been redacted as purportedly nonmaterial, and others as "classified" national security. *Id.*

Plaintiffs seek all information on all blank forms responsive to their document request.

## ARGUMENT

**I.     Plaintiffs have overcome any law enforcement privilege**

"[T]he law enforcement privilege protects "information that would endanger witnesses and law enforcement personnel or the privacy of individuals involved in an investigation and information that would otherwise interfere with an investigation." *United States v. Marsh*, 193 F. Supp. 3d 585, 597 (E.D. Va. 2016) (cleaned up) (quoting *In re The City of New York*, 607 F.3d 923, 944 (2d Cir. 2010)). "Courts agree that the party asserting the law enforcement privilege bears the burden of showing that the privilege applies." *Id.*

"The law enforcement privilege is qualified." *Hugler v. Bat Masonry Co.*, 15-cv-28, 2017 WL 1207847 (W.D. Va. Mar. 31, 2017). The court must balance "[t]he public interest in nondisclosure ... against the need of a particular litigant for access to the privileged information." *Id.* (quoting *In re City of New York*, 607 F.3d at 944).

Once the Government has shown the privilege exists, the burden shifts to the Plaintiffs to show that the privilege is overcome. A party seeking disclosure under the privilege should show "(1) that its suit is non-frivolous and brought in good faith, (2) that the information sought is not available through other discovery or from other sources, and (3) a compelling need for the information." *Id.* (citing *In re The City of New York*, 607 F.3d at 945). Specific factors that the Court must consider favoring disclosure include the relevance and importance of the documents to the plaintiff's case, the strength of plaintiff's case, and the importance of

4

the issues involved to the public interest. *See generally King v. Conde,* 121 F.R.D. 180, 194-96 (E.D.N.Y. 1988) (Weinstein, J.); *see also Martin v. Conner,* 287 F.R.D. 348, 351 (D. Md. 2012) (noting *King* as a "leading" case). In contrast, specific factors disfavoring disclosure include the treat to law enforcement officers' safety and privacy, the weakening of law enforcement programs, the chilling of candor during internal investigation, and any relevant privacy laws. *Id.* at 191-94; *Martin*, 287 F.R.D. at 351.

Once invoked, Courts are not to defer blindly to the Government's assertion. Instead, courts "take very seriously our obligation to review the government's claims with a very careful, indeed a skeptical, eye, and not to accept at face value the government's claim or justification of privilege." *Abilt*, 848 F.3d at 312 (cleaned up) (quoting *Al–Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1203 (9th Cir. 2007)). The burden of showing the state secrets privilege applies is on the Government. *Id.*

Here, assuming the FBI has validly invoked the law enforcement privilege in the first place, Plaintiffs have met their burden under *King*. *Id.* at 191-96. The need for this information is compelling. As the Government is keeping it secret, it cannot be found elsewhere. Its relevance to the Plaintiffs' equal protection claim is obvious, as it goes to the heart as to how and ultimately to what extent Defendants treat Muslims different than other individuals. And Plaintiffs' case is strong and one that is important to the public.

Meanwhile the *King* factors disfavoring disclosure are not applicable here. There is no additional threat to any law enforcement officers' safety and privacy based on the categories of information covered by the TSDB. The Government's primary argument is instead that providing the mere categories of information covered would somehow undermine the program, as if knowing that the FBI keeps information on, for instance, whether a listee is

5

classified as an International Terrorist (IT), domestic violent extremist (DVE), or homegrown violent extremists (HVE) would provide a master workaround to the Government's TSDB. *See* Exhibit C (Sentinel form) (providing "subject type" as one category but not providing options other than "International Terrorist"); see also Amended Complaint Dkt. 48, at ¶ 8 ("The Defendants know that their watchlisting system has never prevented an act of terrorism inside the United States and is completely ineffective, but they continue to expand it anyways. In the last 10 years alone, Defendant CBP reports that its encounters with individuals suspected of having terrorism-related or national security concerns has skyrocketed from 365 per year (in 2008) to more than 550,000 per year (in 2017)"); *id.* at ¶¶ 177-190 (categorizing the TSDB's ineffectiveness).

The Court should require Defendants to produce the entirety of all blank forms that are responsive to Plaintiffs' requests. To the extent necessary, Plaintiffs request the Court review the material in camera in order to aid it in adjudicating this motion.

**II.    The FBI may not redact information on the basis of relevance**

The FBI also redacted some information from the forms at issue as "not responsive." *See* Exhibits B and E. Plaintiffs requested the forms, and anything on the forms are therefore, by definition, responsive. And parties cannot redact information from a responsive document merely because that information is not relevant. *See Toyo Tire & Rubber Co., Ltd. v. CIA Wheel Group*, 2016 WL 6246384, at *2 (C.D. Cal. Feb. 23, 2016) (collecting cases); *Scranton Products, Inc. v. Bobrick Washroom Equip., Inc.*, 190 F. Supp. 3d 419, 437 n.17 (M.D. Pa. 2016) (same). The Court should order the FBI to lift all redactions Defendants made on the basis of responsiveness.

### III. SSI Information should be produced to counsel with SSI clearance

The FBI also redacted some information that is "secure sensitive information." Exhibits. B and E. Several of Plaintiffs' counsel have been approved to review such information. Those redactions should be made available to that counsel.

### IV. Classified National Security Information should be subject to a proper invocation of privilege

The State Secrets privilege has three prerequisites before it can be invoked. First, it must be asserted by the United States government; it "can neither be claimed nor waived by a private party." *U.S. v. Reynolds*, 345 U.S. 1, 7 (1952) (footnotes omitted). Second, "[t]here must be a formal claim of privilege, lodged by the head of the department which has control over the matter." *Id.* at 7–8. Third, the department head's formal claim of the state secrets privilege may be made only "after actual personal consideration by that officer." *Id.* at 8; *see generally Abilt v. CIA*, 848 F.3d 305, 311 (4th Cir. 2017).

Once invoked, Courts are not to defer blindly to the Government's assertion. Instead, courts "take very seriously our obligation to review the government's claims with a very careful, indeed a skeptical, eye, and not to accept at face value the government's claim or justification of privilege." *Abilt*, 848 F.3d at 312 (cleaned up) (quoting *Al–Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1203 (9th Cir. 2007)). The burden of showing the state secrets privilege applies is on the Government. *Id.*

In this case, the FBI claims that it has redacted certain information that is "properly classified pursuant to executive order, the disclosure of which could reasonably be expected to cause damage to the national security or the conduct of the government's international relations." Exhibit. E. This appears to be a reference to the state secrets privilege. *See generally N.S.N. Intern. Indus. v. E.I. Dupont de Nemours & Co., Inc.*, 140 F.R.D. 275, 281 (S.D.N.Y.

7

1991). The Government did not formally raise either the state secrets privilege nor its potential in response to this document request.  If and when it does, Plaintiffs will review the invocation and respond accordingly. Otherwise, the Court should order disclosure. At minimum, the Court should review the redactions in camera to determine whether they are properly classified.

## CONCLUSION

The Court should grant Plaintiffs' Motion to compel. The Court should order the Merits Defendants to provide unredacted responses to FBI Request for Production #1 forthwith so Plaintiffs can query the database. At minimum, the Court should require such responses to be provided under seal with a suitable protection order in place.

Dated: April 14, 2021                                        Respectfully Submitted,

BY: /s/ Lena F. Masri
Lena F. Masri (20251)
Gadeir I. Abbas (20257) *
Justin Sadowsky (20128)
CAIR LEGAL DEFENSE FUND
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 488-8787

*Mr. Abbas is licensed in VA, not in D.C. Practice limited to federal matters.*

Attorneys for Plaintiffs

## CERTIFICATE OF COMPLIANCE

I certify that on Friday, April 2, at 1:00 PM ET, I participated in a telephonic conversation with Daniel Schwei, Antonia Konkoly, and Christopher Healy in a good faith attempt to resolve this discovery dispute. On April 12, the Government provided a revised production making minor revisions to their redactions (most notably, unredacting the words "show sourcing" and the number of characters allowed to be inputted on one part of the form. *Compare* Exhibit B at 613 with Exhibit F). This did not resolve any dispute.

The issue before the Court is whether the responsive forms provided by counsel (*see* Exhibit B) should be provided in unredacted form.

/s/ Gadeir Abbas
Gadeir I. Abbas
