**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| MUTASEM JARDANEH, *et al.*,    ) | |
| ) | |
| Plaintiffs,    ) | |
| ) | Case No. 8:18-cv-02415-PX |
| v.    ) | |
| ) | |
| MERRICK B. GARLAND, *et al.*,    ) | |
| ) | |
| Defendants.    ) | |
| ) | |
| ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This is a mass action challenging the legality of the Federal Government's Terrorism Screening Database ("TSDB") and related watchlists (herein after "TSDB" or "Watchlists"). Currently pending before the Court are the following motions and responses thereto: (1) Plaintiffs' Motions to Compel (ECF Nos. 114, 123); (2) Defendants' "Combined Opposition to Plaintiffs' Motions to Compel" (ECF No. 128); (3) Plaintiffs' "Reply in Support of Motion to Compel" (ECF No. 135); (4) Defendants' "Sur-Reply in Opposition to Plaintiffs' Motions to Compel" (ECF No. 140); (5) Defendants' "Motion for Leave to File *In Camera*, *Ex Parte* Declarations" (ECF No. 141); (6) Plaintiffs' 'Response to Defendants' Motion for Leave to File *In Camera*, *Ex Parte* Declarations" (ECF No. 143); and (7) Defendants' "Reply Memorandum in Support of Motion for Leave to *In Camera*, *Ex Parte* Declarations" (ECF No. 147).  The matter has been fully briefed and a hearing was held.  For the reasons set forth below, Plaintiffs' Motions to Compel are **DENIED** in part. The Court **RESERVES** ruling on some issues, as set forth herein.  By separate order, "Defendants' Motion for Leave to File *In Camera*, *Ex Parte* Declarations" has been **GRANTED**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

As a preliminary matter, this Court adopts the detailed factual background set out in the Memorandum Opinion issued by the district court on July 20, 2020. ("Memorandum Opinion") (ECF No. 73).

Following the issuance of the Memorandum Opinion, several of Plaintiffs' claims remain live.  Specifically, Plaintiffs assert that their inclusion in the TSDB and associated Watchlists violates: (1) Procedural Due Process[1] (Count I); (2) Substantive Due Process (Count II); (3) the Administrative Procedure Act (Count III); (4) the Equal Protection Clause (Count V); (5) the Fourth Amendment (Count VI); (6) the Fifth Amendment right against self-incrimination Count VIII); and (7) The Religious Freedom Restoration Act ("RFRA") (Counts X, XI).  Additionally, when the district court denied Defendants' Motion to Dismiss the Plaintiffs' claims as to the WLAC-Agency Defendants, the district court authorized discovery into the role of the WLAC's management of the TSDB and watchlists, including the promulgation of Watchlisting Guidance (the policy that governs the Watchlisting process).  (ECF No. 73, p. 19).

On September 22, 2020, this matter was referred to the undersigned for all discovery and related scheduling.  (ECF No. 87).  On December 23, 2020, the Court issued a Federal Rule of Civil Procedure 16(b) Scheduling Order, which set out a bifurcated discovery schedule as to the Merits Defendants[2] and the WLAC Agency Defendants.[3]  (ECF No. 104).  On May 7, 2021, a

---

[1] Plaintiffs' Procedural Due Process claim alleges that Plaintiffs inclusion in the TSDB has resulted in a deprivation of their travel-related liberty interests and their reputational liberty interests (Plaintiffs' "stigma-plus claim").  (ECF No. 73, pp. 23-35).

[2] The Merits Defendants consist of the following six entities: the Terrorist Screening Center ("TSC"); the Federal Bureau of Investigation ("FBI"); the Department of Homeland Security ("DHS"); U.S. Customs and Border Protection ("CBP"); the Transportation Security Administration ("TSA"); and the National Counterterrorism Center ("NCTC").

[3] The WLAC Defendants consist of the following twenty entities: the U.S. Department of Justice ("DOJ"); DOJ's National Security Division ("DOJ-NSD"); DOJ's Office of Legal Policy ("DOJ-OLP"); DOJ's Office of Privacy and Civil Liberties ("DOJ-OPCL"); the Office of the Director of National Intelligence ("ODNI"); U.S. Citizenship and Immigration Services ("USCIS"); U.S. Immigration and Customs Enforcement ("ICE"); DHS's

Supplemental Rule 16(b) Scheduling Order issued.  (ECF No. 132).

Discovery as to the WLAC Defendants has closed, (ECF No. 151), with the exception of any discovery that might be required following this Court's ruling on the pending Motions to Compel.  Regarding the Merits Defendants, discovery is ongoing.  The Motions to Compel and oppositions thereto were filed between March 19, 2021 and June 1, 2021.  On June 7, 2021, Defendants filed a Notice of Intent to File a Renewed Motion to Dismiss certain counts, relying upon the Fourth Circuit's decision in *Elhady v. Kable*, 993 F.3d 208 (4th Cir. 2021), and upon what they characterize as new factual developments related to the putative "No Fly List" Plaintiffs. (ECF No. 142).

At the direction of this Court, on August 2, 2021, the parties submitted a Joint Status Report with an update as to the status of discovery.  (ECF No. 151).  Thereafter, on August 11, 2021, Plaintiffs filed a "Motion to Extend Discovery" (ECF No. 152), which Defendants Opposed on August 23, 2021.  (ECF No. 154).  On August 26, 2021, Defendants filed a "Motion to Compel the Production of Documents and Completion of Interrogatory Responses."  (ECF No. 155-3).[4]

## II. DISCUSSION

### A. Federal Rules of Civil Procedure—Discovery Requests

Federal Rule of Civil Procedure 26 provides that litigants "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Initially, the burden is on the party seeking discovery "to establish its relevancy and proportionality, at which point the burden shifts to the party resisting

---

Office for Civil Rights and Civil Liberties ("DHS-CRCL"); DHS's Office of Intelligence and Analysis ("DHS-I&A)"; DHS's Office of General Counsel ("DHS-OGC"); DHS's Office of Strategy, Policy, and Plans ("DHS-PLCY"); DHS's Privacy Office ("DHS-PRIV"); U.S. Department of State (State); the U.S. Department of Defense ("DoD"); the National Security Agency ("NSA"); the Defense Intelligence Agency ("DIA"); the U.S. Department of the Treasury ("Treasury"); Treasury's Financial Crimes Enforcement Network ("FinCEN"); the Central Intelligence Agency ("CIA"); and the Watchlisting Advisory Council ("WLAC").

[4] The Court will resolve these motions separately.

discovery to demonstrate why the discovery should not be permitted." *O'Malley v. Trader Joe's East, Inc.*, Civ. Case No. RDB 19-3273, 2020 WL 6118841, at *2 (D. Md. Oct. 15, 2020).

As a general matter, this Court notes that requests for: "any and all documents;" "documents of any kind;" lists of "every entity of every kind;" and "all documents of any kind," on their face, are so broad as to thwart the intent behind Rule 26(b)(1)—how do such non-specific requests seek only relevant information? How are these requests truly proportional to the needs of the case? In addition, the Court notes that generally such types of requests run afoul of Federal Rule of Civil Procedure 26(c), 33(b), and Federal Rule Civil Procedure 34(b)(1)(A). A litigant cannot propound a discovery request that annoys, embarrasses, oppresses, or causes an undue burden or expense to the opposing party. *See* Fed. R. Civ. P. 26(c).

At issue in the Motions to Compel before the Court are Plaintiffs' requests, which appear to be, on their face, quite broad. Plaintiffs' request: (1) "documents of any kind that regard Plaintiffs in any way" ("Issue #1"); (2) "every entity of any kind that has ever had access to TSDB information in any way" ("Issue #2"); and (3) "all documents of any kind . . . that regard the Watchlisting Advisory Council in any way" ("Issue #3"). (ECF No. 114). Also at issue is a document request directed only at the FBI, seeking "[a]ll standard forms . . . that relate to any watchlisting system process, including nominating, placing, or removing individuals from the TSDB, the No Fly List, the Selectee List, or any other TSDB-related list" ("Issue #4") (ECF No. 123). The record before this Court establishes that, with respect to Issue #1 – Issue #3, the Defendants did not reject these requests outright, as this Court finds that they could have, consistent with Rule 26. Rather, the Defendants tried to identify the parameters for reasonable searches and responses to information sought. (*See* ECF Nos. 114-1, 114-2, 128). In some instances, the Plaintiffs did not object to some of the Defendants' scope-identifying efforts, opting

instead to remain silent or not affirmatively assist in refining Defendants' responses. (*See, e.g.*, ECF Nos. 114, p. 15; 128, pp.17-18; 128, p. 57; 123, p. 3). With respect to Issue #4, the record reflects that Defendant FBI responded to this request. (ECF Nos. 123-1, 123-2).

As set forth more fully later on in this memorandum opinion and order, Defendants have produced some documents, some responses to interrogatories, and privilege logs, or asserted privileges to prevent disclosure of the same. The Court briefly summarizes the responses here. Regarding Issue #1, the Defendants produced documents and privilege logs, and asserted a privilege. (ECF Nos. 128, p. 13; 128-1). Regarding Issue #2, Defendants FBI and TSC responded to this request. (ECF No. 114-2, pp. 26-40). Regarding Issue #3, Defendants provided a few documents from the TSC "in its role as co-chair of the WLAC," asserting that the TSC maintains said documents "in a central repository." Defendants also provided interrogatory responses and a privilege log. (ECF Nos. 114-4, 128-3, 128-10). Regarding Issue #4, Defendant FBI produced a redacted version of the FBI's Form FD-930 as well its Watchlist Submission Form. (ECF Nos. 123-1, 123-2). The Plaintiffs have not challenged the universe of documents produced on this issue, but, rather, the completeness of the response. (ECF No. 123).

In their responses to Defendants' actions, this Court finds that Plaintiffs have not always clearly articulated or persuasively argued why the proposals advanced by the Defendants do not sufficiently provide Plaintiffs with the information that is truly relevant to their claims. Instead, the Plaintiffs make a series of general arguments insisting that they are entitled to more than what the Defendants have produced. (*See* ECF Nos. 133, 135).

It is through this prism, that the Court views the Plaintiffs' Motions to Compel.

     B.   <u>The Fourth Circuit's Decision in *Elhady v. Kable*</u>

During the briefing of this discovery dispute, the United States Court of Appeals for the

Fourth Circuit decided *Elhady v. Kable*, 993 F.3d 208 (4th Cir. 2021).[5]  In their responses to the Motions to Compel, Defendants relied quite extensively upon *Elhady*.  (ECF Nos. 128, 140).  In addition, Defendants have sought leave of court to file a motion to dismiss Counts I - III of the First Amended Complaint, arguing that *Elhady* requires the dismissal of Plaintiffs' procedural and substantive due process claims that allege harm to their travel-related liberty interests and to their reputational liberty interests.  (ECF No. 142).

As a preliminary matter, the district court has decided that all dispositive motions shall be filed at the conclusion of discovery related to the Merits Defendants.  *See* 993 F.3d at 218 (Fourth Circuit addressing the district court's grant of summary judgment).  Thus, this Court's ruling on the Motions to Compel does not fully address the potential impact of *Elhady* on discovery sought by Plaintiffs. This is because, even assuming *arguendo* that Defendants prevail on their proposed motion to dismiss, other counts remain in the First Amended Complaint that involve the same plaintiffs as identified in Counts I - II.  Specifically, all Plaintiffs in Counts I - III are also Plaintiffs who have advanced one or more challenges based on alleged violations of the Equal Protection Clause, Fourth Amendment, Fifth Amendment, or RFRA.  (ECF No. 48, pp. 242-257, 250-251, 252-257; ECF No. 73, p. 32 n.13, p. 39 n. 16-17).  As a result, regardless of the outcome on the motion to dismiss, discovery must continue to address the claims advanced in Counts V, VIII, X, and XI.

In light of this, the Court orders both parties to continue to analyze *Elhady's* possible impact on discovery in this case as they navigate through, e.g., pending and future requests for

---

[5] In *Elhady*, the Fourth Circuit reversed the trial court's finding that the *Elhady* plaintiffs' placement on the TSDB violated the Fifth Amendment's Due Process Clause.  The trial court had found violations of the *Elhady* plaintiffs' protected liberty interests under two theories: (1) the TSDB harmed plaintiffs' movement related interests by deterring and burdening their travel; and (2) the TSDB harmed plaintiffs' reputational liberty interests by labeling them as known or suspected terrorists and disseminating that information in a manner affecting plaintiffs' interactions with law enforcement and their ability to access various licensing applications.  993 F.3d at 213, 218.

production of documents, interrogatories, and/or depositions to be taken.  In addition, the parties are hereby ordered to meet and confer again to specifically discuss what happens if Counts I – III are struck, and what happens if they are not.  For instance, if the counts are not struck, are Plaintiffs entitled to the exact same things they have sought thus far in discovery?  Assuming that the counts are dismissed, another question is whether Plaintiffs are entitled to DHS TRIP information, and if so, how is it relevant to establish, e.g., their Equal Protection or other claims?  Are Plaintiffs entitled to information on all private entities?  If so, how is that information relevant to establishing, e.g., their Equal Protection or Fourth Amendment claims?  A necessary part of the "meet and confer" discussions must be preceded by the parties fresh review **now** of the district court's Memorandum Opinion denying Defendants' original motion to dismiss, as it has always provided direction on the scope of permissible discovery **for specific plaintiffs, by claim**.  (*See, e.g.,* ECF No. 73, pp.21-22, 27, 31-21, 34, 44-46, 48, 51, 54, 59-61).  After that review, the Plaintiffs should be able to more particularly articulate what information is relevant and proportional to support any refined requests for documents and interrogatory responses that help them to advance claims in, e.g., Counts V, VIII, X and XI.

    With that said, to the extent that Defendants object to the Motions to Compel based on *Elhady*, this Court's memorandum opinion and order sets forth that fact.  However, the Court does not rely upon *Elhady* in making its rulings.

    C.    Issue #1- Information Regarding Plaintiffs

            1. *Facts*

    Plaintiffs seek from the Merits Defendants "[a]ll documents of any kind that regard Plaintiffs in any way."  (ECF No. 114-1, p. 4).  Defendants first objected to Plaintiffs' request as vague and overbroad, and for failing to comply with Federal Rule of Civil Procedure 34's

reasonable particularity requirement.  Defendants also contend that the request seeks information: (1) subject to the law enforcement privilege; (2) that is Sensitive Security Information; and (3) that is potentially subject to the state secrets privilege.  (ECF No. 128, p. 12; ECF No. 114-1, pp. 3-5).

Defendants have narrowed Plaintiffs' request to five categories of Plaintiff-specific information,[6] which they believed to be reasonable to search in response to Plaintiffs' request.  In response to this new scope, Defendants produced thousands of pages of documents and a privilege log with respect to documents held by the Federal Bureau of Investigation ("FBI"), Customs and Border Protection ("CBP"), and the Transportation Security Administration ("TSA").  (ECF No. 128, pp. 12-13; ECF No. 128-1).  The productions included: (a) from Defendant FBI, any Form FD-302s that document and summarize FBI interviews with Plaintiffs, (ECF No. 114-1, p. 9, Merits Defendants' Objections and Responses to Plaintiffs' First Set of Requests for Production); (b) from Defendant CPB, any TECS records pertaining to all Plaintiffs, PNR records pertaining to

---

[6] These five categories of information include the following:

- **TSC:** (1) TSDB records for any Plaintiff who is or was in the TSDB; (2) TSC encounter records relating to any Plaintiff who was in the TSDB at the time of the encounter; and (3) TSC redress files for any Plaintiff who submitted a request to DHS TRIP and whose request was referred to TSC.
- **FBI:** (1) Any records from FBI investigative files necessary to understand the basis for any Plaintiff's placement in the TSDB; and (2) any FD-302 forms that document and summarize FBI interviews of Plaintiffs.
- **CBP:** Records pertaining to Plaintiffs from (1) the TECS system (the principal law enforcement information collection, analysis and sharing environment used by officers at the border to facilitate the law enforcement and antiterrorism mission of CBP), and (2) Passenger Name Records (PNR) (information from commercial air carriers or their travel reservation systems which include data regarding persons travelling to and from the United States on commercial air carriers, to the extent collected by the carrier); as well as (3) records pertaining to Plaintiff Esmaeel Paryavi's alleged denial of his Global Entry application.
- **TSA:** (1) Documents in TSA's custody pertaining to Plaintiffs' DHS TRIP submissions; (2) Security Threat Assessment files pertaining to Plaintiff Zijad Bosnic's alleged loss of his Transportation Worker Identification Credential (TWIC); and (3) any Secure Flight records pertaining to Plaintiffs.
- **NCTC:** Records from a classified database known as the Terrorist Identities Datamart Environment (TIDE) necessary to understand the basis for any Plaintiff's placement in the TSDB that are not copies of records of another Merits Defendant.

(ECF No. 128, p. 12).

all Plaintiffs, and any records pertaining to Plaintiff Paryavi's alleged denial of his Global Entry application, (*Id.*, p. 12); and (c) from Defendant TSA, all documents in TSA's custody related to Plaintiffs' DHS TRIP submissions, and Security Threat Assessment files pertaining to Plaintiff Bosnic's alleged loss of his TWIC.  (*Id.*, pp. 12-13).  Defendants also provided Plaintiffs with privilege logs reflecting a series of documents withheld in connection with Plaintiffs' request.  (*See* ECF No. 128-1).

However, Defendants identified four categories of documents from the TSC, FBI, TSA, and the National Counter-Terrorism Center ("NCTC"), which they alleged could not be produced or described on a privilege log because the very existence or non-existence of these documents is privileged information.  (ECF No. 128, p. 13).  Defendants explained they could not list the following four categories of information on a privilege log:

> (1) For TSC, all Plaintiff-specific documents, because the existence or non-existence of those documents would (among other things) confirm or deny Plaintiffs' past and current status in the TSDB, which is protected from disclosure by, *inter alia*, the law enforcement privilege.

> (2) For FBI, any records from FBI investigative files necessary to understand the basis for any Plaintiff's placement in the TSDB, because the existence or non-existence of those documents would likewise confirm or deny TSDB status as well as the FBI's investigative interest in an individual, which are themselves facts protected by, *inter alia*, the law enforcement privilege.

> (3) For TSA, any Secure Flight records pertaining to Plaintiffs, because the existence or non-existence of such records would likewise tend to confirm or deny an individual's status in a subset of the TSDB.

> (4) For NCTC, any TIDE records necessary to understand the basis for any plaintiff's placement in the TSDB, because the existence or non-existence of such records would tend to reveal whether any plaintiff is of intelligence interest to the Intelligence Community, contrary to, *inter alia*, the law enforcement privilege and an ODNI statutory privilege.

(ECF No. 128, pp. 13-14).

2. *Arguments and Analysis*

Plaintiffs advance five arguments in support of their motion to compel production of this information.  First, in response to Defendants' contention that Plaintiffs request is overbroad, Plaintiffs claim that their request is "efficient and to the point."  (ECF No. 114, pp. 7-8).  Second, Plaintiffs argue that Defendants fail to properly invoke the state secretes privilege.  (ECF No. 114, p. 7).  Third, although not entirely clear from the pleading, Plaintiffs appear to argue that Defendants' refusal to provide a privilege log for the documents from the TSC, FBI, TSA, and NCTC was improper.  In particular, Plaintiffs aver that without a privilege log neither they nor the Court can adequately assess Defendants' assertion of the law enforcement privilege.  (ECF No. 114, pp. 4-5).  Fourth, Plaintiffs contend that the Court should compel disclosure of "all documents of any kind that regard Plaintiffs in any way" because Plaintiffs' compelling need for them overcomes Defendants' assertion of the law enforcement privilege.  (ECF No. 114, pp. 7-11; ECF No. 135, pp. 9-16).  Fifth, to address Defendants' concerns about the public disclosure of documents produced to Plaintiffs, Plaintiffs urge the Court to order that the documents be produced to them via a protective order or attorney's eyes-only protective order.  In the alternative, Plaintiffs request that the Court review the documents *in camera* in order to ensure Defendants have properly invoked the law enforcement privilege.  (ECF No. 114, p. 11).

Defendants counter with several arguments.  First, that they have produced thousands of documents and a privilege log to support the withholding of documents. Second, that Plaintiffs have waived any claims regarding the scope of Defendants' response, in light of Plaintiffs' failure to identify any deficiency associated with Defendants' definition of the scope.  (ECF No. 128, p. 22).  Third, that Plaintiffs have waived any arguments regarding Defendants' assertion of

privileges other than the law enforcement privilege.[7]  (ECF No. 128, p. 30).  Fourth, Defendants have identified categories of documents that they contend "could not be produced."  (ECF No. 128, p. 13).  Specifically, pursuant to Federal Rule of Civil Procedure 26(b)(5)(A)(ii), the Local Rules of this Court, and caselaw permitting *Glomar* responses,[8] Defendants argue that they need not produce a privilege log where doing so would reveal privileged information.  (ECF No. 128, pp. 13, 23-24).  Relatedly, where, as here, Defendants submit declarations that explain why confirming or denying the existence of documents would reveal privileged information, a privilege log is not required.  (ECF No. 128, pp. 24-29).  Fifth, Plaintiffs have failed to establish a compelling need for law enforcement investigations information, which Defendants contend is protected from disclosure because it would reveal law enforcement's sources and methods.  (ECF No. 128, p. 30-31).  Sixth, Defendants assert that disclosure of this information to Plaintiffs via protective order would be improper, given its highly sensitive nature and the harms that could flow from its unauthorized disclosure.  (ECF No. 128, pp. 39-44).  Last, "Plaintiffs themselves have no need for this information, particularly given that *ex parte, in camera* review of the information would be available at summary judgment if necessary."  (ECF No. 128, p. 31).

Reviewing the record, this Court does not find that Plaintiffs have persuasively preserved their objection to the Defendants' definition of the scope of available Plaintiff-specific information (*i.e.*, five categories of information from TSC, FBI, CBP, TSA, NCTC).  Defendants' narrowing of the scope was a reasonable response to an overbroad request for documents.

---

[7] On May 6, 2021, this Court ordered Defendants to assert any and all defenses, with the exception of the state secrets privilege, in response to Plaintiffs' Motions to Compel.  (ECF No. 131).  The Court further ordered that, to the extent it granted Plaintiffs' Motions to Compel, in whole or in part, the parties would have fourteen days to meet-and-confer and file a joint status report setting forth their respective position(s) on timing of any potential state secrets privilege assertion.  (*Id.*).  This Court's review of the Defendants responses to the Motions to Compel reveal that the Defendants are not formally invoking the state secrets privilege.

[8] A federal agency's decision to neither confirm nor deny the existence of information requested in the context of a Freedom of Information Act request is known as a *Glomar* response.  *See Igoshev v. NSA*, Civ. No. ELH 17-1363, 2018 WL 2045530, at *1 n.2 (D. Md. May 1, 2018).

Accordingly, the remaining issues are as follows: (1) whether, for documents that "could not be produced," the Federal Rules of Civil Procedure and the law permit Defendants to provide declarations in lieu of a privilege log; (2) Plaintiffs seek information protected by the law enforcement privilege; (3) if the law enforcement privilege applies, have Plaintiffs demonstrated a compelling need for the information sought; and (4) whether the issuance of a protective order or *in camera* review is appropriate.

### 3. *The Privilege Log-Declaration Question*

Pursuant to Federal Rule of Civil Procedure 26(b), when a party withholds otherwise discoverable information based on privilege, that party must:

> expressly make the claim; and describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A)(i),(ii).  Generally, this description takes the form of a privilege log "which identifies each document withheld, information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 265 (D. Md. 2008).

Plaintiffs suggest that the Federal Rules of Civil Procedure, as well as the Local Rules for the District Court of Maryland, require the Defendants to submit a privilege log for documents withheld.  This Court does not find Plaintiffs' argument persuasive.

First, Federal Rule of Civil Procedure 26(b)(5)(A)(i) requires that a party expressly claim privilege.  Here, the Defendants have expressly asserted the law enforcement privilege.  Second, while it is true that, as a general matter, "[a] party cannot simply claim privilege and refuse to provide a privilege log," *see Hake v. Carroll County*, Civ. Case No. WDQ 13-1312, 2014 WL

3974173, at *9 (D. Md. Aug. 14, 2014) (citation omitted), this does not mean that the submission of a privilege log is always required. Where providing a privilege log would result in the disclosure of information that is itself privileged or protected, no privilege log is required. The plain language of Federal Rule of Civil Procedure 26(b)(5)(A)(ii) makes that clear. *See also Waterkeeper Alliance, Inc. v. Alan Kristin Hudson Farm*, Civ. Case No. WMN 10-487, 2011 WL 13217389, at *5 (D. Md. June 1, 2011) (explaining that neither Fed. R. Civ. P. 26(b)(5)(A)(ii) nor Local Rule App'x A, Guideline 10(d) require submission of a privilege log that would result in the disclosure of protected information). This Court's reading of Rule 26(b)(5)(A)(ii) comports with the 1993 Advisory Committee notes, which explain that in "rare circumstances some of the pertinent information affecting applicability of the claim, such as the identity of the client, may itself be privileged; the rule provides that such information need not be disclosed."

However, even where the submission of a privilege log is not required, the party resisting discovery must still "describe the nature of documents, communications, or tangible things not produced or disclosed" in a manner that will enable the party seeking discovery to assess the claim. Fed. R. Civ. P. 26(b)(5)(A)(ii). This can be accomplished by submitting a declaration in lieu of a privilege log. *See Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 29 F. Supp. 3d 142, 150-51 (E.D.N.Y. 2014) (finding magistrate judge properly exercised her discretion to allow party resisting discovery to use a declaration to satisfy their disclosure obligations under Rule 26(b)(5)(A) because the "rule does not prescribe any particular format for disclosing privilege claims").

In the instant case, Defendants submitted a complete declaration (i.e., not redacted) of Gregory Koch, from the Office of the Director of National Intelligence. (ECF No. 128-7, Declaration of Gregory M. Koch, Chief of the Information Management Office, Office of the Director of National Intelligence ("Koch Decl.") ¶¶ 17-23). According to the Koch Declaration,

confirming or denying the existence of plaintiff-specific NCTC TIDE information would reveal whether the intelligence community has an interest in any of the Plaintiffs, as well as potentially reveal intelligence collection methods and sources. (*Id.*, ¶¶17-19). Regarding the Koch declaration, the Court finds that the Plaintiffs did not object to its submission.

In addition, Defendants submitted two partially-redacted declarations: the Declaration of Jason Herring, Deputy Director of Operations of the Terrorism Screening Center (ECF No. 128-4), and the Declaration of Michael Glasheen, Acting Deputy Assistant Director, Counterterrorism Division, Federal Bureau of Investigation (ECF No. 128-5). Defendants sought leave from the Court to file *ex parte*, *in camera*, unredacted versions of both declarations. (ECF No. 141, 147). Defendants argue that the submission of declarations that include information that is itself privileged is necessary for Defendants to fully explain why the information sought by Plaintiffs is protected from disclosure by the law enforcement privilege. (ECF No. 141, pp. 5, 8-11). Plaintiffs opposed the motion. (ECF No. 143). In that pleading, Plaintiffs focus primarily on concerns about the veracity of Defendants' declarations in light of events that occurred in separate but related litigation. Plaintiffs appear to assert that Defendants should be precluded from filing unredacted declarations *ex parte* and *in camera* because doing so would undermine the adversarial process. (ECF No. 143, pp. 7-10).

Even though the Court separately ruled that Defendants' submission of *ex parte* declarations is proper,[9] this Court has resolved the issue of whether a privilege log is required by fully relying upon the publicly-filed redacted declarations. As set forth below, the Court did this after resolving whether the redacted declarations describe the withheld categories of documents in a manner that enables Plaintiffs to assess the privilege assertion. In short, this Court finds that the

---

[9] On September 13, 2021, the Court issued an order granting the Defendants motion to submit the un-redacted declarations *ex parte* and *in camera*. (ECF No. 160).

redacted declarations are sufficiently detailed.[10]

The Court now addresses Plaintiffs' arguments regarding the declarations.  First, Plaintiffs do not explain why the redacted declarations are inadequate to assess the claim of privilege.  (*See* ECF Nos. 114, 135).  Second, beginning with the withheld TSC documents, the redacted declaration of Jason Herring explains that none of the TSC documents can be listed on a privilege log because doing so would: (a) "effectively disclose [an individual's] TSDB status;" (b) permit terrorist groups to determine which of their operatives are included in the TSDB and which are not; and (c) "risk exposing highly sensitive law enforcement methods and techniques, . . . jeopardizing ongoing investigations into potential terrorist threats."  (ECF No. 128-4, "Herring LES Decl." ¶¶ 29, 41,46).  The Court finds that the redacted Herring Declaration adequately describes the basis for Defendants' assertion of the law enforcement privilege over the TSC documents in a manner that enables Plaintiffs to assess Defendants' claim of privilege.

Third, the Court finds to be sufficient the declarations submitted for the three remaining categories of documents sought by Plaintiffs (namely, the FBI investigative records, TSA's Secure Flight Records, and NCTC TIDE records).  Defendants submitted a declaration of Michael Glasheen, which sets forth the basis for Defendants' assertion of the law enforcement privilege over the FBI investigative records sought by Plaintiffs.  (ECF No. 128-5, "Glasheen Decl." ¶¶ 17-27).  The Glasheen Declaration sets forth how confirming the existence of any Plaintiff specific

___

[10] Even though the Court resolved this issue without relying upon the redacted declarations, this Court could have relied upon the *ex parte* declarations.  Indeed, Plaintiffs have encouraged this Court to review materials *ex parte* and *in camera* to confirm whether Defendants' assertion of the law enforcement privilege is valid.  (*See, e.g.*, ECF No. 114, pp. 11, 14, 16).  Accordingly, the Court finds no substantive basis to preclude its review of the unredacted declarations.

In light of this Court's finding that Defendants properly declined to provide a privilege log for the four categories of withheld documents, the Court declines to address Defendants' alternative argument that relies on the *Glomar* line of cases for the proposition that a privilege log was not required here.

FBI investigative records would reveal a Plaintiff's TSDB status, whether any Plaintiffs are or were the subject of a current or closed FBI investigation, and endanger ongoing FBI investigations, investigative techniques, and sources of information.  (Glasheen Decl., ¶¶ 17-27).

Fourth, regarding the TSA's Secure Flight Records, the Herring Declaration explains that acknowledging the existence of any Plaintiff-specific records would in and of itself confirm or deny a plaintiff's TSDB status, and would also potentially expose law enforcement methods and techniques, which could potentially jeopardize ongoing investigations.  (Herring LES Decl., ¶ 47). The Glahseen Declaration also sets forth how the disclosure of any Plaintiff-specific NCTC TIDE records would similarly reveal whether any Plaintiffs are the subject of an FBI investigation.[11] (Glasheen Decl., ¶¶44-47).

In sum, all of the declarations describe the bases for withholding the four categories of documents in a manner that enables Plaintiffs to assess Defendants' privilege claim.  Accordingly, this Court now turns to the issue of whether these documents are, in fact, protected from disclosure by the law enforcement privilege.

### 4. *Legal Framework for Analyzing Law Enforcement Privilege*

As an initial matter, the parties disagree on the appropriate legal framework for assessing the application of the law enforcement privilege in this matter.  Plaintiffs urge the Court to apply the framework set out in *King v. Conde*, 121 F.R.D. 180 (E.D.N.Y. 1988).  Defendants counter that the *King* framework is inapplicable in national-security cases, and urge the Court to follow the test articulated in *In re The City of New York*, 607 F.3d 923 (2d Cir. 2010).  Defendants aver

---

[11] Separately, Defendants assert ODNI's statutory privilege over the NCTC TIDE records sought by Plaintiffs.  According to the Koch Declaration, disclosure of NCTC TIDE records would reveal whether any Plaintiffs are of intelligence interest to the Intelligence Community, which could result in an improper disclosure of intelligence sources and methods. (Koch Decl., ¶¶ 18-23) (explaining that revealing the existence of an individual's TIDE record, and the documents associated with that record, could provide that an individual with sufficient information to deduce sources or methods used by the Intelligence Community to learn about that individual's activities).

in the alternative that, even if this Court finds *King* applicable, the *King* factors weigh against disclosure of the documents sought by Plaintiffs.  (ECF No. 128, pp. 33-34).  For the reasons discussed below, this Court shall apply the framework established in *In re The City of New York* to assess Defendants' assertion of the law enforcement privilege.

At the outset, this Court does not believe that the Fourth Circuit has directly addressed the standard for evaluating an assertion of the law enforcement privilege.  *See*, *e.g.*, *United States v. Matish*, 193 F. Supp. 3d 585, 597 (E.D. Va. 2016) ("The Fourth Circuit has not directly addressed the law enforcement privilege.").  The *King* and *In re The City of New York* cases both set out multi-factor balancing tests for assessing the applicability of the law enforcement privilege.  However, the context in which the discovery disputes arose in those cases dictate their respective applications.

The discovery dispute in *King* arose in the context of a § 1983 civil rights action brought against the Suffolk County, NY police department.  *King*, 121 F.R.D. at 186.  In contrast, the dispute in *In re The City of New York* involved a civil rights suit against the New York City Police Department ("NYPD"), which raised national security implications.  607 F.3d at 929-30, 944.  At issue in *In re The City of New York* was whether "Field Reports" by undercover NYPD officers who gathered intelligence on the threat of terrorism and mass unrest in the run-up to the 2004 Republican National Convention were subject to the law enforcement privilege.  *Id*. at 931.

In the District of Maryland, use of the *King* framework to assess assertions of the law enforcement privilege has been limited to "instances in which production is sought from the police" in matters unrelated to national security.  *See Kimberlin v. Frey*, Case No. GJH 13-3059, 2016 WL 11201235 at *1 (D. Md. Mar. 3, 2016) (declining to apply *King* where Plaintiff sought to compel production of documents from the Los Angeles District Attorney's Office); *see also*

*Martin v. Conner*, 287 F.R.D 481, 351 (D. Md. 2016) (applying *King* framework to assess assertion

of law enforcement privilege in civil rights suit against members of the Maryland State Police);

*Bellamy-Bey v. Baltimore Police Dep't*, 237 F.R.D. 391, 392-93 (D. Md. 2006) (applying *King* to

assess assertion of law enforcement privilege where plaintiff sought to compel production of

records from the internal investigations division of the Baltimore Police Department in a civil

rights suit against the Baltimore Police department).  Here, Plaintiffs seek to compel the production

of information that Defendants contend has national security implications.  Therefore, this Court

declines Plaintiffs' invitation to apply a modified version of the *King* framework.  Instead, the

*Court* will assess Defendants' assertion of the law enforcement privilege using the framework set

out in *In re The City of New York*.  *See Martin*, 287 F.R.D. at 350 n.4 (explaining that *In re The*

*City of New York* involved "national security" and is "distinguishable from typical § 1983 actions

regarding police misconduct").

The framework for assessing an assertion of the law enforcement privilege set out in *In re*

*The City of New York* is as follows.  First, the party asserting the privilege must demonstrate that

the privilege does in fact apply to the documents or information at issue.  *In re The City of New*

*York*, 607 F.3d at 948.  To establish that the law enforcement privilege applies, the party asserting

the privilege must demonstrate that the documents sought include:

> (1) information pertaining to law enforcement techniques and
> procedures;  (2)  information  that  would  undermine  the
> confidentiality of sources; (3) information that would endanger
> witness and law enforcement personnel; (4) information that would
> undermine the privacy of individuals involved in an investigation;
> or (5) information that would seriously impair the ability of a law
> enforcement agency to conduct future investigations.

*Id.* (citations omitted).  Once the party asserting the privilege establishes its applicability, the party

seeking disclosure must overcome the "strong presumption against lifting the privilege." *Id.*  To

rebut this strong presumption, the party seeking disclosure must demonstrate that: (1) "the suit is non-frivolous and brought in good faith"; (2) "the information sought is not available through other discovery or from other sources"; and (3) "the party has a compelling need for the privileged information." *Id.* Only upon rebutting this strong presumption does the court "weigh the public interest in nondisclosure against the need of the litigant for access to the privileged information before ultimately deciding whether disclosure is required." *Id.*

### 5. *Applicability of Law Enforcement Privilege*

Here, the redacted declarations provide sufficient detail for the Court to find that the law enforcement privilege applies to the four categories of withheld documents.[12] As set forth previously, both declarations demonstrate that the information sought is privileged.[13] (*See* Herring Decl., ¶¶ 46-47 (explaining basis for assertion of law enforcement privilege over any Plaintiff specific TSC documents, NCTC TIDE records or TSA Secure Flight Records)); (Glasheen Decl., ¶¶ 17-27, 44-47 (explaining basis for assertion of law enforcement privilege over any Plaintiff specific FBI investigative records and NCTC TIDE records)).

Based on this Court's review of Defendants' declarations, the Court finds that Defendants have properly invoked the law enforcement privilege. Accordingly, this Court does not find that *in camera* review is required.

---

[12] At the outset, this Court understands that the district court may later find that the Fourth Circuit, in *Elhady*, held that an individual's TSDB status is protected from disclosure. *See Elhady*, 993 F.3d at 215 (explaining the disclosure of TSDB status "would disrupt and potentially destroy counter-terrorism investigations because terrorists could alter their behavior, avoid detection, and destroy evidence" as well as "alert terrorists to the tactics used by the government to detect them").

[13] Defendants argue that the TSA Secure Flight records are protected by the TSA's Sensitive Security Information ("SSI") privilege because confirming or denying these documents existence would reveal whether an "individual is or was on a government watchlist at the time of a particular trip." (ECF No. 128, p. 27; ECF No. 128-6, pp. 3-5 "SSI Final Order" (explaining that disclosing the existence or non-existence of Secure Flight records would inform Plaintiffs of their status in the TSDB and subsets of the TSDB, such as the No Fly, Selectee, or Expanded Selectee lists). This Court's review of Defendants privilege claim with respect to the TSA Secure Flight records is limited to Defendants' assertion of the law enforcement privilege because the review of SSI orders must occur in the Courts of Appeals. *See Blitz v. Napolitano*, 700 F.3d 733, 741-42 (4th Cir. 2012) (explaining that judicial review of orders of the TSA Administrator are vested in the appropriate courts of appeals).

6. *Analysis*

Having established that the law enforcement privilege applies to the four categories of withheld documents, the burden shifts to Plaintiffs to rebut the strong presumption against disclosure.  In this case, the parties do not dispute that Plaintiffs' suit is "non-frivolous and brought in good faith."  *In re The City of New York*, 607 F.3d at 948.  Therefore, it is Plaintiffs' burden to demonstrate that the information they seek is not available through other discovery or from other sources, and that they have a compelling need for the information.  *Id.*

Plaintiffs contend that they cannot obtain the information they seek through any other sources, despite Defendants' arguments to the contrary.  (ECF No. 114, p. 8; ECF No. 135, p. 11).  Defendants counter that Plaintiffs can in fact obtain the information they seek through other sources because: (1) Plaintiffs have proven the same facts based on information obtained in the *Elhady* litigation; and (2) can litigate their as applied challenges to watchlist placement based on "their own knowledge of their activities, as well as other publicly available information."  (ECF No. 128, p. 36).

Preliminarily, this Court does not find Defendants' arguments persuasive.  Unlike the *Elhady* plaintiffs' challenge to the TSDB, which was a facial attack limited to a Fifth Amendment Procedural Due Process claim, here, Plaintiffs have also brought Equal Protection claims, Fourth Amendment claims, Fifth Amendment claims, and RFRA claims, all ostensibly stemming from their alleged placement in the TSDB.  For instance, central to Plaintiffs' Equal Protection claim are allegations that Defendants "selectively apply and enforce watchlist and screening policies to individuals who appear to be or who are . . . Muslim or Middle Eastern" while declining to apply the same treatment to similarly situated white or Christian individuals.  (ECF No. 48, pp. 55-57, ¶¶ 194-204; p. 243, ¶ 1611).  This Court is not entirely persuaded that Plaintiffs can prove such a

claim based on information that they have gleaned about Defendants' alleged practices solely from their lived experiences. Central to Plaintiffs' RFRA claim is Plaintiffs' allegation that invasive questioning about their religious beliefs—specifically the "details of Plaintiffs' adherence to the Muslim faith"—is the reason they are placed on the Watchlists. This Court is similarly not persuaded that Plaintiffs' lived experiences can provide them with the information they seek in discovery to establish their RFRA claims. And Defendants' argument that Plaintiffs can obtain this discovery from "other publicly available sources," without more, is simply too vague to persuade this Court that the discovery sought by Plaintiffs is indeed available from other sources. *See Floyd v. City of New York*, 739 F. Supp. 2d 376, 384 n.34 (S.D.N.Y. 2010) (finding information sought by moving party was not available through other discovery or from other sources because the defendants, who were "uniquely situated as the party asserting the privilege to demonstrate that plaintiffs already have [or have access to] the information sought," made no such showing).

As ruled previously, the Court finds that the manner in which Plaintiffs framed their request was overbroad. Given that the Court has ordered the parties to review the district court's Memorandum Opinion, and to meet and confer while keeping the Memorandum Opinion and *Elhady* in mind, the Court will provide Plaintiffs with an opportunity to refine their discovery request. Accordingly, this Court also reserves ruling on whether Plaintiffs have established a compelling need for the plaintiff-specific documents, and whether their need outweighs the Defendants' legitimate law enforcement interests. Relatedly, this Court will not now address whether Plaintiffs are unable to obtain the information that they seek through other sources.

Finally, the Court will reserve ruling on Plaintiffs' request for a protective order or an attorney's-eyes-only protective order until after the parties have met and conferred, and updated the Court as to the whether the revised request remains at issue. In sum, the Court **RESERVES**

ruling on this issue.

    D.   Issue #2: Private Entity and Foreign Government Access to TSDB Information

        1. *Facts*

In connection with Plaintiffs' second interrogatory, Plaintiffs requested that each Merits Defendant "Identify every entity of any kind that has ever had access to TSDB information in any way, including but not limited to . . . access via government-issued Original Record Identifier." (ECF No. 114-2, p. 23). Plaintiffs now seek to compel disclosure of two categories of information following Defendants' response to this interrogatory: (1) the identity of each private entity with TSDB access; and (2) a list of all foreign governments with TSDB access. (ECF No. 114, pp. 11-16; ECF No. 128, p. 14).

        a.  *Private Entities*

In response to Plaintiffs' second interrogatory, Defendants identified three classes of entities that are entitled to apply for access to the TSDB via an Originating Agency Identifier ("ORI"): (1) authorized governmental criminal justice agencies ("CJAs"); (2) authorized governmental non-criminal justice agencies ("non-CJAs"); and (3) authorized private entities preforming or supporting criminal justice functions. (ECF No. 114-2, p. 32)). Defendants provided Plaintiffs with a complete list of all CJAs and non-CJA's holding ORIs. (ECF No. 114-2, pp. 32-33). However, for the third category—authorized private entities performing or supporting criminal justice functions—Defendants only provided Plaintiffs with a breakdown of the number and types of private entities holding ORIs.[14] (ECF No. 114-2, p. 34). Defendants

---

[14] Defendants provided Plaintiffs with the following list explaining that the following types and numbers of qualified private entities hold ORIs:

    police departments of railroads (170); police departments of private colleges or universities (244); private correctional facilities (78); private security services for governmental facilities and hospitals (44); entities providing criminal justice dispatching services or data processing/information services to governmental

relying on the law enforcement privilege, declined to provide Plaintiffs with a list identifying every private entity holding an ORI by name, asserting that public disclosure of such a list could be misused by persons seeking to access the National Crime Information Center[15] ("NCIC") for an improper purpose.  (ECF No. 114-2, pp. 30-31).

### b. Foreign Entities

In response to Plaintiffs' second interrogatory, Defendants also disclosed the names of certain foreign countries with which the United States has information-sharing agreements ("HSPD-6 agreements/countries") governing the dissemination of subsets of TSDB information. Defendants acknowledged the existence of information-sharing agreements with all 38 countries that participate in the United States Visa Waiver Program as well as five additional countries for which publicly releasable information is available on the Department of State Treaty Office website.  (ECF No. 114-2, pp. 27-28).   Following a meet and confer between the parties, Defendants also agreed to stipulate to the existence of information-sharing agreements between the United States and India, Malaysia, and Kuwait.  (ECF No. 128-2, pp. 8-9).  However, based on the record before this Court Plaintiffs did not respond to this proposal.  (*Id.*). Defendants declined to provide the names of the remaining countries with which the United States shares subsets of TSDB information, asserting that this information constitutes "SSI and law-enforcement

---

criminal justice agencies (1); private probation services (27); private pretrial services (4); private police department for an airport (1); a private police department for a transportation authority (1); private police departments for NASA and the Department of Energy (2); law enforcement divisions of certain Societies for the Prevention of Cruelty to Animals ("SPCAs") (1); an inmate transport service (1); an entity that provides forensic services to detect and identify criminals (1); and court constable services (2).

(ECF No. 114-2, p. 33).
[15] The NCIC is "a nationwide computerized database that enables information-sharing among criminal justice agencies" and includes access to a subset of TSDB information.  (ECF No. 128, pp. 14-15; ECF No. 114-2, p. 30). An ORI permits a CJA, non-CJA, or a private entity performing or supporting criminal justice functions to submit queries to the NCIC.  (ECF No. 128, p. 15; ECF No. 114-2, p. 29-34).

sensitive information."[16]  (ECF No. 114-2, p. 28).

2. <em>Arguments and Analysis</em>

a.  <em>Private Entities</em>

Plaintiffs advance two arguments as to why this Court should compel disclosure of the names of all private entities with ORIs.  First, Plaintiffs contend that they cannot obtain this information through other discovery because it is secret.  Second, Plaintiffs argue that they have a compelling need for this information because it is central to their stigma-plus claim and "goes to the heart of how stigmatizing watchlist placement is."  (ECF No. 114, pp. 13-14).

Defendants counter that Plaintiffs fail to explain why the specific identities of private entities holding ORIs are relevant to their claims.  (ECF No. 128, pp. 44-45).  Specifically, Defendants argue that the Court need not assess whether the list of private entities is even protected by the law enforcement privilege because Plaintiffs' stigma-plus claim is foreclosed by *Elhady*. (ECF No. 128, p. 45).  Next, Defendants contend that Plaintiffs have not established a compelling need for this information given that four of the five remaining plaintiffs with stigma-plus claims allege actions involving federal entities, and the one plaintiff with a claim against private entity involves a private firearms dealer—a category of private entities that are ineligible for an ORI. (ECF No. 128, p. 45).  Last, Defendants aver that assuming Plaintiffs could establish a need for the name of every private entity, any such need is outweighed by the potential harm to the FBI's law enforcement interests.  Of concern to the Defendants is what would happen should the list fall into the hands of a would-be wrongdoer seeking to access information stored in NCIC.  (ECF No.

---

[16] Defendants also assert that the existence of information-sharing agreements between the United States and foreign governments is information that is potentially subject to the state secrets privilege.  (ECF No. 114-2, p. 28). Defendants note that the Attorney General formally asserted the state secrets privilege over information that "could be used to identify certain countries with which the U.S. has information-sharing agreements concerning the terrorist watchlist."  (ECF No. 128-4, p. 11 n.5).  However, as previously discussed, this Court has deferred consideration of any assertions of the state secrets privilege pending the resolution of Plaintiffs' Motions to Compel.  (*See* ECF No. 131).

128, pp. 45-46).

As this Court has ordered the parties to review the district court's Memorandum Opinion and *Elhady*, and to meet and confer, this Court will defer ruling on whether Plaintiffs can obtain the names of all private entities with an ORI.  Plaintiffs are advised that they should be prepared to articulate why they are entitled to information about private entities in light of the Memorandum Opinion and *Elhady*.

Accordingly, this Court **RESERVES** ruling on whether Plaintiffs have established that this information is relevant to their claims, and whether they have demonstrated a compelling need for information that outweighs Defendants' legitimate law enforcement interests.

### b.  Foreign Entities

Plaintiffs request a list of all foreign entities that have entered into an HSPD-6 agreement with the United States. Plaintiffs appear to argue that this Court should compel disclosure of this information because it is relevant to Plaintiffs' stigma-plus and travel-restriction-claims, principally because of the harm that Plaintiffs might face if they were to travel to a country that has been informed of their TSDB status.  (ECF No. 114, pp. 14-16).  Defendants counter that Plaintiffs no longer have a need for this information in light of *Elhady*, which they believe forecloses their stigma-plus claim.  (ECF No. 128, p. 48).  In addition, Defendants argue that even assuming Plaintiffs' stigma-plus claims survive after *Elhady*, Plaintiffs have not established a compelling need for this information.  According to Defendants, Plaintiffs' alleged travel-related injuries involve a pattern of multi-hour delays, and not a fear of traveling to other countries.  (ECF No. 128, p. 49).  Defendants contend that TSC's interest in protecting the full list of HSPD-6 countries outweighs Plaintiffs' asserted need.  In particular, Defendants claim that the disclosure of such a list would harm the FBI's ability to conduct counter-terrorism investigations with the aid

of foreign governments, and would enable potential terrorists to avoid travel to the HSPD-6 countries.  (ECF No. 128, pp. 50-51).

Plaintiffs appear to advance two arguments as to why they need a complete list of HSPD-6 countries.  First, Plaintiffs allege that the list is relevant to establishing their stigma-plus claim. Second, Plaintiffs appear to argue that they need to know the identities of all HSPD-6 countries to prove the physical harm that they could experience from traveling to a country that has been told that Plaintiffs are known or suspected terrorists.  (ECF No. 114).

As this Court has said previously, all briefing related to a potential motion to dismiss based on *Elhady* shall occur at the end of discovery.  Next, the parties are directed to meet and confer, as ordered previously.  The Court believes that Plaintiffs should reevaluate their need for the HSPD-6 information.  This is because the Court does not presently find Plaintiffs' arguments persuasive. Plaintiffs cite broadly to other cases in which challengers to the watchlist were tortured in foreign countries.  However, none of the surviving Plaintiffs who have pled a deprivation of their travel-related liberty interests allege that they no longer travel internationally due to a fear of physical harm at the hands of a foreign government resulting from their alleged inclusion in the TSDB.[17] (ECF No. 48, ¶¶. 323-34, 424-43, 459-78, 498-512, 656-59, 1212-18 (by air); *Id.* ¶¶ 309-13, 493-94, 664-67, 1096-1105 (by land)).  On this record, Plaintiffs have not articulated a compelling need for a complete list of all HSPD-6 countries.  The burden is on Plaintiffs to prove the need for this information to help them establish their claims.

Accordingly, the Court **RESERVES** ruling on this request.

    E.   Issue #3: Document Request Related to WLAC Defendants' Documents

        1. *Facts*

---

[17] The Court notes that Plaintiffs have also failed to put forward arguments on this point as well.

In connection with Plaintiffs' first request for production of documents from the WLAC Defendants, Plaintiffs requested "[a]ll documents of any kind—including but not limited to minutes, correspondences, rules, agreements, policies, procedures, memoranda, internal and external reports, internal and external communications—that regard the Watchlisting Advisory Council in any way." (ECF No. 114-4, p. 4, WLAC Defendants' Objections and Responses to Plaintiffs' First Set of Requests for Production ("WLAC RFPD")). The WLAC Defendants objected to Plaintiffs' request on the following grounds: (1) as not relevant to Plaintiffs' claims; (2) overbroad, unduly burdensome, and disproportionate to the needs of this case; (3) protected from disclosure by the SSI, law enforcement, and deliberative process privileges; and (4) unreasonably duplicative. (ECF No. 114-4, pp. 4-7). Notwithstanding these objections, Defendant TSC agreed to process all available Summaries of Conclusions ("SOCs") and/or meeting minutes from meetings of the WLAC and meetings of WLAC working groups, from 2014 to the present. (ECF No. 114-4, p. 7). Defendants explained that TSC would process this request because it maintains a central repository of documents pertaining to the WLAC. (ECF No. 114-4, p. 7). Defendants informed Plaintiffs that the SOCs and meeting minutes "are the best summary of the deliberations that occurred at any particular WLAC meeting or WLAC working group meeting." (ECF No. 114-4, p. 7). On March 1, 2021, TSC produced to Plaintiffs one redacted SOC from 2017. (ECF No. 128-3, p. 2, TSC Production Log). On March 2, 2021, TSC produced to Plaintiffs a privilege log describing all remaining SOCs and meeting minutes and the bases for their withholding, including the law enforcement privilege, the deliberative process privilege, and statutory privileges. (ECF No. 128-3, pp. 3-58, TSC Privilege Log).

The parties' meet-and-confer correspondence reveals that Plaintiffs initially characterized Defendants as having failed to process any documents in connection with this document request.

(ECF No. 128-2, p. 6).  Defendants informed Plaintiffs that they had agreed to process documents related to this request, at which point Plaintiffs sought more information about TSC's repository of WLAC documents.  (ECF No. 128-2, p. 4).  Defendants provided Plaintiffs with additional information regarding the TSC's document repository and further articulated the basis for the WLAC Defendants' objection to searching for documents other than those processed by the TSC. (ECF No. 128-2, p. 8).  Based on the record before this Court, it does not appear that Plaintiffs ever responded to the Defendants' most recent efforts.

2. *Arguments and Analysis*

Initially, Plaintiffs argued that Defendants failed to perform a search, provide a privilege log, or disclose non-privileged information in response to their first request for production from the WLAC Defendants.  (ECF No. 114, pp. 16-18).  Defendants countered that they did all three, providing Plaintiffs with one redacted SOC and a privilege log of the remaining SOCs and meeting minutes from 2014 to the present.  (ECF No. 128, pp. 57-59).  Defendants also argued that Plaintiffs failed to challenge the real basis for the WLAC Defendants' objections—undue burden—and did not meaningfully challenge TSC's invocation of the deliberative process privilege over the SOCs and meeting minutes listed on the privilege log.  (ECF No. 128. pp. 56-57; 59-61).

Perhaps recognizing that their initial motion to compel misconstrued Defendants' response to this document request, Plaintiffs, in their Reply motion, urge this Court to reject Defendants' undue burden argument.  (ECF No. 135, p. 22).  Plaintiffs argue that Defendants routinely search electronic devices capable of holding 400 gigabytes of data at border crossings, an amount far greater than the six gigabytes or 10,000 potentially responsive documents Defendants have stated they would need to search in response to Plaintiffs' request.  (*Id.*).  Plaintiffs assert that they should

not be deemed to have waived any undue burden argument, where Defendants focused on their assertion of the deliberative process privilege during the parties' meet-and-confer.  (*Id.*).  In the alternative, Plaintiffs contend that any prejudice to Defendants is cured by the Court having granted Defendants the opportunity to file a sur-reply.  (*Id.*).

In response, Defendants argue that Plaintiffs waived their undue burden challenge—which was expressly raised during the parties' meet-and-confer discussions—by failing to assert it in their initial motion to compel.  (ECF No. 140, p. 12).  Assuming the Court considers Plaintiffs' undue burden argument, Defendants argue that they would be required to spend a minimum of 1,500 hours reviewing 61,000 potentially responsive documents likely to be subject to claims of privilege.  (ECF No. 140, pp. 12-13).  Defendants also aver that they should not be required to engage in such a burdensome endeavor, where Plaintiffs have not articulated why they need the requested documents.  (ECF No. 140, p. 13).  Moreover, Defendants argue that the WLAC Defendants' response to Plaintiffs' first set of interrogatories has provided them with another source from which to obtain the information they seek to compel.  Thus, Defendants argue that Plaintiffs' request should be denied consistent with Federal Rule of Civil Procedure 26(b)(2)(C)(i).  (ECF No. 128, p. 57).   This Court finds Defendants' arguments persuasive.

As an initial matter, because Defendants were granted the opportunity to file a sur-reply, the Court finds that any prejudice to Defendants in considering Plaintiffs' undue burden argument is minimal at best.  Therefore, the Court turns to Defendants' undue burden objection.

Under Rule 26(b)(2)(C)(i), the Court "may order that discovery not be produced if it finds that the discovery request is either unreasonably cumulative, duplicative, or *obtainable from some other convenient but less burdensome or less expensive source*."  *Hall v. Sullivan*, 231 F.R.D. 468, 472 (D. Md. 2005) (emphasis in original).  In assessing whether the documents sought will be

produced, the Court balances several factors including: (1) whether the expense and/or burden associated with the discovery request is proportional to the benefits the information will provide in the case; and (2) "the parties' resources and the importance of the discovery as related to the importance of the particular issues implicated by the discovery."  *Id.*

Here, the Rule 26(b)(2) factors weigh against granting Plaintiffs' motion to compel production of the responsive documents in the possession of the WLAC Defendants.  The Court credits Defendants' representation that they would be required to spend a minimum of 1,500 hours reviewing 61,000 documents, many of which are likely to be subject to further claims of privilege. (ECF No. 140, pp. 12-13).  The Court notes that the Plaintiffs have not contested the truth of this representation.  Next, the Court finds that granting this request would excessively burden Defendants, particularly where the Plaintiffs have failed to articulate their need for these additional materials.

Alternatively, even if this request does not unduly burden the Defendants, this Court will deny Plaintiffs' request. The Plaintiffs have not answered the question posed by Rule 26(b)(2)(C)(i), i.e., whether they can obtain information from some other source.  Plaintiffs' Interrogatory No. 2 directed the WLAC Defendants to "[i]dentify every action—including but not limited to communications, meeting participation, consideration of policies, etc.—that you have taken that regards the Watchlisting Advisory Council in any way."  (ECF No. 128-10, p. 22).  In response, Defendants described, "each WLAC Defendants' general role and participation in the WLAC."  (ECF No. 128-10, p. 25).  In light of Plaintiffs' failure to respond to Defendants' argument, this Court finds that Plaintiffs have waived any claim that they cannot obtain the information sought in this request from any other sources.  As such, the Court denies Plaintiffs' request for production of documents from the WLAC Defendants on this ground as well.

Finally, relying upon the Herring WLAC Declaration, the Defendants formally invoke the deliberative process privilege over the documents listed on the privilege log. (*See* ECF No. 128-9, pp. 7-9, Declaration of Jason Herring, Regarding WLAC Documents). Plaintiffs do not dispute that Defendants have properly invoked the deliberative process privilege over the WLAC documents. Accordingly, this Court finds that Plaintiffs have waived any argument regarding Defendants' assertion of the same.

Plaintiffs Motion to Compel is **DENIED** as to the request for production of additional WLAC documents.

### F.   Issue #4: FBI FD-930 and Watchlist Submission Forms

#### 1. *Facts*

In connection with Plaintiffs' request for production of documents to Defendant FBI, Plaintiffs sought production of "[a]ll standard forms . . . that relate to any watchlisting system process, including nominating, placing, or removing individuals from the TSDB, the No Fly List, the Selectee List, and any other TSDB-related list." (ECF No. 123-1, p. 4). Defendant FBI raised several objections to Plaintiffs' request, including that this information was protected by the law enforcement privilege. (ECF No. 123-1, pp. 4-5). Without waiving its objections, the FBI agreed to process a blank version of its Form FD-930, which is the standard form used by the FBI to nominate an individual for placement or removal from the TSDB. (ECF No. 123-1, p. 6; ECF No. 128, p. 17). The FBI also determined that its Watchlist Submission Form, which is used by FBI agents to submit Watchlist nomination and modification requests to the FBI's TSDB nomination unit (ECF No. 123-2, pp. 2-36), was responsive to Plaintiffs' request. (ECF No. 128, p. 17). Neither of these forms exist as a paper document, but rather refer to "the names of electronic interfaces that exist in certain FBI systems." (ECF No. 128, p. 51; ECF No. 123-3, p. 2).

Defendants provided Plaintiffs with partially-redacted digital images of the FBI's Form FD-930 and its Watchlist Submission Form.  (ECF No. 123-1, p. 5; ECF No. 123-2, ECF No. 123-3, p. 3; ECF No. 128, pp. 52-53).  To do so, Defendant FBI captured digital images of each section of the interface, using test data to advance through each section.  (ECF No. 128, p. 51; ECF No. 123-3, pp. 2-3).  Defendants redacted the majority of the information tracked on each form as protected by the law enforcement privilege, but redacted other information as: (1) classified pursuant to executive order; (2) Sensitive Security Information; or (3) information which is not responsive.  (ECF No. 123-5, p. 2).   The unredacted sections of the Form FD-930 revealed that the following fields are tracked by Defendant FBI: name; citizenships, date of birth, physical characteristics, and cautions.   Within the physical characteristics field, Defendants track the following: skin tone; complexion; race; and ethnicity.[18]  (ECF No. 123-2, pp. 2, 31, 33, 36).

During the meet-and-confer discussions between the parties, they have gone back and forth over how possible additional categories that are relevant to Plaintiffs' Equal Protection claim can be identified.  (ECF No. 128-2; ECF No. 135, pp. 18-21).

## 2. *Arguments and Analysis*

Plaintiffs first contend that Defendant FBI has redacted some information on the forms it produced because it has determined that they contain information that is not responsive.  (ECF No. 123-5).  Defendants do not appear to directly respond to Plaintiffs' argument regarding the redaction of information that Defendant FBI has determined is not relevant.  Rather, Defendants argue that Plaintiffs cannot demonstrate a compelling need for "the remaining categories of information tracked on the FBI's nomination forms."  (ECF No. 128, p. 52).

Plaintiffs assert that they have a compelling need for unredacted versions of the Form FD-

---

[18] The digital images of the nomination forms also capture the available responses for each subcategory of information.  (ECF No. 123-2, pp. 2, 31, 33, 36).

930 and Watchlist Submission Form because the redacted fields are central to their Equal Protection claim, and they cannot obtain this information from other discovery given that it is secret.  (ECF No. 123, p. 5).  According to Plaintiffs, the relevance of these forms to their Equal Protection claim is "obvious, as it goes to the heart as to how and ultimately to what extent Defendants treat Muslims different[ly] than other individuals."  (ECF No. 123, p. 5).  However, as this Court understands it, at the core of Plaintiffs' argument is their asserted need to know what categories of information Defendants track so that they can query discrete numerical information in the TSDB.  (ECF No. 123, p. 2; ECF No. 135, pp. 19-20).

Relying on *King v. Conde*, Plaintiffs first assert that they have overcome Defendants' assertion of the law enforcement privilege.  (ECF No. 123, pp. 4-6).  Specifically, Plaintiffs contend that their compelling need for this information outweighs the factors disfavoring disclosure, where disclosure would not threaten the safety and privacy of any law enforcement officers or undermine the efficacy of Defendants' counter-terrorism efforts.  (ECF No. 123, pp. 5-6).  Next, Plaintiffs assert that their counsel has approval for SSI clearance, and therefore any Sensitive Security Information redactions should be made available to Plaintiffs' counsel.  (ECF No. 123, p. 7).  Third, Plaintiffs assert that Defendants appear to be asserting the state secrets privilege as a basis to preclude Plaintiffs' from getting information on the Form FD-930 and Watchlist Submission Form, without having properly invoked the privilege.  (ECF No. 123, pp. 7-8).  Finally, Plaintiffs seek to compel disclosure of the redacted nomination form handling codes.[19]  (ECF No. 123, pp. 6-8; ECF No. 135, pp. 21-22).  Plaintiffs appear to argue that the handling codes are relevant to their Equal Protection claim because the codes directly connect watchlist criteria to

---

[19] Plaintiffs concede that they do not seek to compel the production of two additional redacted categories of information in the nomination forms: (1) the Selectee List inclusion standard; and (2) the phone number for the FBI's TSDB nomination unit.  (ECF No. 135, p. 21).

the consequences Plaintiffs experience because of their inclusion in the TSDB.  (ECF No. 135, p. 21).  Plaintiffs assert that Defendant FBI has inappropriately redacted this information as non-responsive, which Plaintiffs contend they cannot do merely because that "information is not relevant." (ECF No. 123, p. 6).

Defendants counter the Plaintiffs have not established a compelling need for the redacted categories of information on the nomination forms for two reasons.  First, Defendants argue that Plaintiffs simply assume that the fields tracked by the FBI's nomination forms correspond to the TSDB, despite the Glasheen Declaration's statement that the data fields in the TSDB "do not fully correspond to the data fields" in the nomination forms.  (ECF No. 128, p. 53; Glasheen Decl., ¶ 52).  Second, Defendants point to the information they have already provided Plaintiffs about the categories tracked on the nomination forms, their confirmation that religion is not tracked on either form, and Plaintiffs' failure to identify any other categories of information that might be relevant to their Equal Protection claims.  (ECF No. 128, p. 51-54).  Regarding the redacted handling codes, Defendants assert that this information was redacted pursuant to the law enforcement privilege, a claim Plaintiffs do not meaningfully challenge. [20]  (ECF No. 128, p. 55; ECF No. 123, pp. 4-5; ECF No. 135, pp. 21-22).  However, Defendants' response to Plaintiffs' arguments that they need the handling codes for their Equal Protection claim is that the Plaintiffs have not demonstrated a compelling need for this information.

Central to this Court's assessment of whether Plaintiffs have a compelling need for the redacted information on the forms is whether the redacted categories of information include constitutionally suspect criteria or will assist Plaintiffs in querying the TSDB to prove that it is

---

[20] Because the Court has ordered the parties to take additional steps, *see* § II.E.2., *supra*, at this time, the Court declines to resolve whether Plaintiffs can obtain the production of information sought based on the Selectee List inclusion standard.  The Court will revisit this issue later should the need arise.

"disproportionately Muslim."  Thus far, Plaintiffs have been unable to prove their Equal Protection claim through other discovery, in part, because Plaintiffs contend that they need to know what categories of information Defendants track before conducting further targeted discovery in support of their Equal Protection claim.  (ECF No. 151, p. 2).  This point is reinforced by the Glasheen Declaration, which notes that the FBI's watchlisting forms track the "sensitive underlying intelligence and derogatory information . . . that forms the basis for an individual's inclusion in the TSDB."  (Glasheen Decl., ¶ 52).  Therefore, the categories tracked on the forms, at minimum, bear on the question of whether Defendants track any constitutionally suspect criteria, even if they do not ultimately support Plaintiffs' argument that Defendants apply the TSDB inclusion standard in a discriminatory manner.[21]  And despite Defendants assertion that the fields in the TSDB do not fully correspond to those tracked on the forms, (Glasheen Decl., ¶ 52), to the extent those categories may assist Plaintiffs in numerically querying the TSDB, the Court could find that Plaintiffs have a compelling need for that information.

In principle, this Court agrees with Plaintiffs that "their discovery rights are not dependent on their ability to play go fish."  (ECF No. 135, p. 21).  From the record, Plaintiffs and Defendants have engaged somewhat during the meet-and-confer process to identify additional categories of information that Plaintiffs believe are relevant to their Equal Protection claim.[22]

This Court need not resolve now whether Plaintiffs have established a compelling need for this information because the parties are hereby ordered to meet and confer again.  The parties should do so after rereading the district court's Memorandum Opinion.  In that Memorandum

---

[21] As explained in Judge Xinis' June 7, 2020 memorandum opinion in this matter, because the criteria for TSDB inclusion "amounts to a facially neutral law or policy," Plaintiffs "must allege facts that allow the plausible inference that such law or policy has been applied in an intentionally discriminatory manner . . . or that its adoption was motivated by discriminatory animus."  (ECF No. 73, p. 43).

[22] Plaintiffs have already identified several categories in their Reply, including: "languages, affiliations with various organizations, or list[s] of entities [watchlistees] have contributed to."  (ECF No. 135, p. 19).

Opinion, the district court found that the Plaintiffs First Amended Complaint provided "sufficient detail" of purposeful discrimination.  (*See* ECF No. 73, pp. 44-45). It seems logical then for the Plaintiffs to review their First Amended Complaint again, which this Court believes would enable them to identify potential categories (e.g., language, financial contributions, donations, and any other words that Plaintiffs can identify based on their own experiences regarding questions that they were asked).

Accordingly, this Court **RESERVES** ruling on whether Plaintiffs have established a compelling need for the unredacted forms and handling codes that outweighs Defendants' legitimate law enforcement interests.  The Court will resolve this issue after the parties have met and conferred as instructed previously.

## III.   CONCLUSION

For the reasons set forth herein, this Court hereby **ORDERS** that Plaintiffs' Motions to Compel (ECF Nos. 114, 123), are hereby **DENIED** in part:

A.  The Court **RESERVES** ruling on Issue #1.

B.  The Court **RESERVES** ruling on Issue #2.

C.  Plaintiffs Motions to Compel are **DENIED** with respect to Issue #3.

D.  The Court **RESERVES** ruling on Issue #4.

Date: September 14, 2021 _____/s/_____
The Honorable Gina L. Simms
United States Magistrate Judge